## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| GEORGE ALLEN COLE, | CASE NO. 1:22-CV-01228 |
| Petitioner, | JUDGE JEFFREY J. HELMICK |
| vs. | MAGISTRATE JUDGE AMANDA M. KNAPP |
| WARDEN KENNETH BLACK, | **REPORT AND RECOMMENDATION** |
| Respondent. |  |

Petitioner George Allen Cole ("Mr. Cole" or "Petitioner") filed the pending habeas

corpus petition under 28 U.S.C. § 2254 on May 27, 2022,[1] asserting five grounds for relief

challenging his forty year aggregate prison sentence and convictions in Cuyahoga County Court

of Common Pleas for forgery, misuse of a credit cards, drug possession, endangering children,

and multiple counts of criminal damaging, theft, and burglary.[2]  (ECF Doc. 1 ("Petition").)

The matter was assigned to the undersigned Magistrate Judge pursuant to Local Rule

72.2.  The case is briefed and ripe for disposition.  (ECF Docs. 7 & 11.)  For the reasons set forth

---

[1] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 273 (1988)). Mr. Cole states he placed the Petition in the prison mailing system on May 27, 2022. (ECF Doc. 1, p. 8.)  The Petition was docketed on July 5, 2022. (ECF Doc. 1.)

[2] Mr. Cole's convictions and sentence stem from four cases (Cuyahoga County Court of Common Pleas Case Nos. CR-14-588878-B, CR-14-589681-A, CR-14-590944, and CR-14-585523-A). (ECF Doc. 7-1, pp. 52-57.)  The three cases involving the burglary, theft, criminal damaging, forgery, and misuse of credit charges were tried together; in the fourth case, Mr. Cole plead guilty to the drug possession and endangering children charges. (*Id.*)  All four cases were consolidated in Mr. Cole's direct appeal. (*Id.* at p. 93.)  In its decision affirming Petitioner's sentence upon resentencing on the burglary convictions, the court of appeals references an aggregate sentence 38 years. (ECF Doc. 7-1, p. 438.)  In his Petition, Mr. Cole states his prison sentence of fifty years was reduced to forty years (ECF Doc. 1, p. 5), which is consistent with the record given the thirty-eight-year aggregate sentence for the burglary convictions and the additional two years stemming from the forgery and drug possession / endangering children sentences (ECF Doc. 7-1, pp. 52-57, 314-15, 322-23, 438).

herein, the undersigned recommends that the Court: (1) **DENY** Ground One with prejudice because it is without merit; (2) **DISMISS** and/or **DENY** Ground Two with prejudice because it is not cognizable and/or without merit; (3)  **DISMISS** and/or **DENY** Ground Three with prejudice because it is not cognizable and/or without merit; (4) **DISMISS** and/or **DENY** Ground Four with prejudice because it is not cognizable and/or without merit; and (5) **DISMISS** and/or **DENY** Ground Five with prejudice because it is procedurally defaulted and/or without merit.

## I.      Factual Background

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *See id.*; *Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008).

The Eighth District Court of Appeals summarized the facts underlying Mr. Cole's convictions and sentence as follows:

{¶ 2} George Cole ("Cole") was arrested and charged in three separate cases for participating in six burglaries from July 19, 2014 through August 26, 2014 in Cleveland, Fairview Park, and Rocky River. Cole was charged along with his girlfriend, Danielle Panagopoulos ("Danielle"), and his brother, John Cole ("John"). Cole and Danielle were charged in a fourth case that was unrelated to the burglaries.

{¶ 3} In Cuyahoga C.P. No. CR–14–590944–B, Cole was charged with four counts of burglary, four counts of theft, forgery, misuse of credit cards, and two counts of criminal damaging. In Cuyahoga C.P. No. CR–14–589681–A, Cole was charged with burglary and theft. In Cuyahoga C.P. No. CR–14–588878–B, Cole was charged with burglary, theft, and criminal damaging. In Cuyahoga C.P. Case No. CR–14–585523–A, Cole was charged with drug possession and two counts of endangering children. Cole pleaded no contest to the indictment in CR–14–585523–A and the case was continued for sentencing. Cole's codefendants pleaded guilty to amended indictments, and Cole's remaining cases proceeded to a single trial before a jury.

{¶ 4} The state's theory was that Cole and his brother would case westside neighborhoods in broad daylight looking for houses in which the homeowners had left for work. Cole drove Danielle's black Mercury Mariner SUV and would drop his brother off near the intended target. John would break into the houses and steal jewelry, coins, and other valuables, sometimes also stealing a pillowcase to carry the stolen goods. Danielle did not accompany the men on the burglaries; her role was to take the valuables to various pawn shops and sell them.

{¶ 5} When Danielle was arrested, she had several cell phones in her car, including one that Cole used, and a book in which the group kept a log of the houses they had burglarized along with many other properties that, according to the state, the group was targeting.

**a. Cleveland Burglaries**

{¶ 6} The first burglary occurred on July 19 or 20, 2014, while the Readinger family was asleep in their Cleveland home. When Mrs. Readinger woke up the next morning, she discovered a window screen in her kitchen had been moved. She did not realize her purse was missing until her credit card company called her to report suspected fraud. She discovered that her credit card had been used at two gas stations and someone forged her signature on the credit card slips. Her purse also contained a Kindle reader, makeup, and credit cards. She valued the missing items at $600; none of the items were recovered.

{¶ 7} Officer Thomas Manson of the Cleveland Police Department investigated the burglary and discovered that the victim's credit card had been used at a Marathon gas station. The officer requested surveillance video and saw two men on the video, one who appeared to be using Readinger's credit card.

{¶ 8} Karen Fletcher, who worked at the gas station, retrieved the video surveillance and credit card receipt for the police. Fletcher identified Cole, whom she happened to be related to, as the man who used the stolen credit card. Danielle, who testified for the state at trial, also identified Cole in the video. Danielle confirmed that "John [Cole] stole a purse out of a lady's kitchen window, and they [John and Cole] used the credit card to buy gas and cigarettes at that gas station."

{¶ 9} On August 8, 2014, the Vietses' residence was burglarized. That day, Mrs. Viets left the house to take her daughter to a doctor's appointment. Her son, who was home from college, left the house to do some work at a local church. When Mrs. Viets returned home from the appointment, she discovered that the back door to the house had been kicked in and her jewelry boxes were missing from her bedroom. A pillowcase and one of her husband's rings was also missing. The victim estimated that the value of the jewelry was "probably about $3,000, $3,500."

{¶ 10} The Vietses' residence was located near a Sunoco gas station. Vietses' son discovered that the gas station had surveillance cameras. He went to the gas station that same day and viewed video from around the time of the break-in. The video

3

showed a black SUV slow down in front of the Vietses' house and then drive away. Mrs. Viets pulled out in her minivan and the black SUV returned shortly thereafter. The SUV pulled into the Sunoco gas station and two men exited the vehicle. One of the men walked down the street up to the Vietses' driveway. Another camera angle showed the same man walk across Vietses' neighbor's yard carrying something white a short time later.

{¶ 11} Vietses' son testified that he saw the second male get into the driver's seat of the SUV, pull out of the Sunoco station, and park on his street. The son identified the driver of the SUV in court as Cole. Cleveland Police Detective David Shapiro, who investigated the burglary and viewed the surveillance video, was also able to identify Cole as the driver of the black SUV.

{¶ 12} On August 21, 2014, Joseph Dallos received a phone call at work from his neighbor telling him his house had been broken into. He returned home to discover that his back door had been kicked in and his side porch door was open. His porch railing was also damaged. Drawers in the dining room and bedroom had been rifled through but neither he nor his wife discovered anything missing. He estimated the damage to his porch and door to be $700.

{¶ 13} The same day, Dallos's next door neighbor, Jay Kwast, returned home from work to find two big dents in the doorknob of the side door to his house. One of his downstairs windows was punched in and the outside part of the window was laying on the ground. His house had been ransacked. A pillowcase from his bed was missing and a drawer full of nickels and dimes had been emptied. Kwast received an $800 estimate to fix the window.

{¶ 14} Ann Stefancin testified that she was neighbors with Dallos and Kwast. On August 21, 2014, she was exercising in her sunroom when she saw a person dressed in black pants and hoodie run up the back steps of Dallos's house. Stefancin went outside with her son and saw an unfamiliar black SUV parked in front of the same house. Stefancin yelled out her neighbors' names and saw the person running down the street carrying "a small bag."

{¶ 15} The next day, August 22, Danielle received $424.99 for jewelry she sold to a pawn shop, 650 Gold.

**b. Fairview Park Burglary**

{¶ 16} On August 13, 2014, the Fassetts left their house to go to lunch. When they returned, Mrs. Fassett found that her bedroom had been ransacked. Mr. Fassett discovered that whomever broke into the house had made entry through a sliding glass door; he found pry marks on the door's metal frame.

{¶ 17} Mrs. Fassett testified that she lost at least 50 items of jewelry, which consisted of five-generations worth of jewelry passed down from daughter to daughter. The jewelry included her wedding rings, her mother's wedding rings, and her grandmother's and great-grandmother's wedding bands. The stolen jewelry was

valued at $75,000. She only recovered three tiny earrings; by the time police found where some of her other jewelry had been sold, it had already been sent out to be melted down.

{¶ 18} Fairview Park Police Officer Donald Franks reviewed video of the Fassett's house caught by cameras mounted on their neighbor's house. The video showed the victims leaving their house at 11:56 a.m. on August 13, 2014. Shortly thereafter, a black Mercury Mariner SUV passed by the house. A few minutes later, a man walked into view from the direction the SUV had gone. The man stopped at the Fassett's driveway, looked around, and walked up the driveway. The video showed the Mariner passing back and forth every few minutes.

{¶ 19} Also, on August 13, 2014, John and Cole texted each other the following exchange beginning at 1:37 p.m.:

John: This dude[']s like OMG your [sic] killing me and he was like there's a lot of 14 karat hahaha.

Cole: Lol good maybe 6,000.

John: He's gonna have to go to the bank for sure.

Cole: Tell him get to walking.

John: He's still going through this s* * * and he got a lot more to do.

Cole: How long will it take him to go to bank.

John: Don't know the bank right next store [sic].

John: Their [sic] testing some and taking the stones out we got a lot of 14 karat.

**c. Rocky River Burglary**

{¶ 20} Jane Blahovec, age 82, testified that she returned home from her Zumba class on August 26, 2016, to find that her back door had been destroyed. Her house was in disarray and she was missing her and her husband's wedding rings, valuable jewelry, her husband's coin collection, Franklin Mint memorabilia, a suitcase, a pillowcase from her bed, and money. Blahovec estimated the worth of the jewelry to be around $20,000 and was able to recover some items from a pawnshop by paying her own money to buy the items back.

{¶ 21} Rocky River Detective Craig Witalis investigated the Blahovec burglary and found that access to the house was made through the use of a pry bar on the rear door. The detective recovered some of Blahovec's stolen items at American Eagle Pawn; Patrick Marek of American Eagle testified he paid Danielle Panagopoulos $350 for "coins and other items," on August 29, 2014. Danielle testified that she remembered selling coins on August 29, 2014. On that date, the brothers

5

accompanied Danielle to the pawn shop and she and John went inside while Cole stayed in the car.

### d. State's Case

{¶ 22} Danielle testified that she had been engaged to Cole and they had two children together. She owned a black Mercury Mariner SUV that Cole often drove. In 2014, she was unemployed and addicted to heroin. Cole was also unemployed. To support her family, Cole and his brother, John, would "rob" houses. Their method was to "go out early in the morning before people went to work and case up and down the streets to see when cars would leave, then they would go inside. Well, John would go inside, George would stay out in the car." When they were done, they would return to John's house, call Danielle, and she would take the items to pawn shops.

{¶ 23} Danielle admitted to selling stolen goods at 650 Gold, American Eagle, San Juan Jewelry, and Uncle Ben's. Danielle admitted that the signatures on the 650 Gold receipts were hers and the only items she pawned were ones that the Cole brothers had given her.

{¶ 24} According to Danielle, Darrell Fletcher, Cole's father, who was deceased at the time of trial, also helped sell the stolen jewelry. Steven Hobbs, Cole's cousin, also participated in some of the burglaries. According to Danielle, Hobbs participated in the Dallos burglary and injured himself on the porch.

{¶ 25} Danielle testified that she entered a plea deal with the state. She had heard that the trial court had a "tough reputation on sentencing" and agreed to plead guilty to a lower felony that would subject her to a lower prison sentence in exchange for testifying truthfully against Cole. She admitted she had recently been sentenced to probation, was a convicted felon, and was a "junkie" who had lost custody of her children. She also admitted writing letters to Cole in prison stating that she loved him and, although she had talked to the police, she had lied to them and would "fix it." At trial, Danielle maintained that she had lied in her letters to Cole.

{¶ 26} Roy Roberts, who managed various locations of 650 Gold, testified that the store took in several items of jewelry from Danielle over eight days in August 2014; Danielle had personally signed the sales receipts. Roberts explained the process by which his stores accepted jewelry for purchase. In order to comply with state law, the sales clerk must make a photocopy of the seller's state identification and have the seller sign a sales receipt. The computer-generated sales receipt would include the seller's signature, a description of the item purchased, its weight, and the amount paid for the item. Each receipt was in triplicate form: one copy was saved for the state of Ohio, one copy was attached to the item, and one copy was given to the seller.

{¶ 27 } Keller's Jewelry owner, Tommy Swan, Jr., testified that a white male came into his store with "a bunch of jewelry, in two large Ziploc freezer bags" and asked

Swan if the store bought jewelry. Swan made the male an offer for the jewelry. The man asked to use the store's phone to call his "brother." Swan talked to the man's brother but they could not agree on a price so the man used Swan's phone to call another pawn shop, 650 Gold. According to Swan, he offered the man $4,500 for "a lot of jewelry in both bags. It was high-end jewelry, 18, 21 karat [gold] rings, bracelets, chains. It was very nice, very nice jewelry."

{¶ 28} The police came into Keller's Jewelry about two weeks later and showed Swan some pictures of burglary suspects. Swan picked one of the men as the man with the Ziploc bags of jewelry. Swan was unable to make an in-court identification of Cole.

{¶ 29} Detective Shapiro testified that he investigated the Viets and Readinger burglaries, viewed the video from the Sunoco gas station, and developed George and John Cole as suspects. He eventually arrested George Cole. Detective Shapiro secured a warrant for the cell phone he recovered from Danielle's car; Danielle testified the cell phone belonged to Cole and he was the only one who used that phone. There was also evidence that Cole's cell phone was used in the vicinity of the burglaries, as evidenced by data from cell phone towers.

{¶ 30} After hearing from 24 witnesses and viewing over 90 exhibits, the jury convicted Cole of all charges. The trial court sentenced him to a total of 48 years in prison.

*State v. Cole*, 2016 WL 2756631, at *1–5 (Ohio Ct. App. May 12, 2016); (ECF Doc. 7-1, pp. 166-75.)

## II.    Procedural Background

### A.    State Court Conviction

Mr. Cole was indicted in Cuyahoga County in three cases in 2014 and 2015, stemming from his participation in six burglaries that occurred from July 19, 2014, through August 26, 2014, in Cleveland, Fairview Park, and Rocky River. (ECF Doc. 7-1, pp. 11-12, 14-15, 17-29, 166.) He was charged along with his brother, John Cole, and his girlfriend Danielle Panagopoulos. (*Id.*) He and Ms. Panagopoulos were indicted in an unrelated fourth case in 2014. (*Id.* at pp. 7-8, 166.) The details of the four cases are set forth below:

CR-14-585523-A

A Cuyahoga County Grand Jury indicted Mr. Cole on June 3, 2014, on one count of drug possession and forfeiture of a cell phone, one count of tampering with evidence, and two counts of endangering children. (ECF Doc. 7-1, pp. 7-8.) Mr. Cole plead not guilty to all charges (*id.* at p. 9), and subsequently plead guilty to one count of drug possession with a forfeiture specification and the two misdemeanor counts of endangering children (*id.* at 10; ECF Doc. 7-2, pp. 21-22). The tampering with evidence count was dismissed. (ECF Doc. 7-2, pp. 21-22.)

CR-14-588878-B

A Cuyahoga County Grand Jury indicted Mr. Cole on September 15, 2014, on one count of burglary, one count of theft, and one count of criminal damaging or endangering. (ECF Doc. 7-1, pp. 11-12, 538.) He plead not guilty to all counts in the indictment. (*Id.* at p. 13.)

CR-14-589681-A

A Cuyahoga County Grand Jury indicted Mr. Cole on October 7, 2014, on one count of burglary and one count of grand theft. (ECF Doc. 7-1, pp. 14-15.) He plead not guilty to both counts of the indictment. (*Id.* at p. 16.)

CR-14-590944-B

A Cuyahoga County Grand Jury indicted Mr. Cole on February 9, 2015, on four counts of burglary, four counts of theft,[3] one count of forgery, two counts of criminal damaging, and one count of misuse of credit cards. (ECF Doc. 7-1, pp. 17-29.) He plead not guilty to the charges in the indictment. (*Id.* at p. 30.)

On February 3, 2015, through counsel, Mr. Cole filed a motion in limine to exclude the introduction of any video into evidence that allegedly showed Mr. Cole's involvement in the

---

[3] The theft counts included two felony counts and two misdemeanor counts. (ECF Doc. 7-1, pp. 23, 26, 27, 29.)

charged offenses. (ECF Doc. 7-1, pp. 31-34, 35-38, 39-42.) On March 6, 2015, through counsel, Mr. Cole filed a motion for separate trials for the three burglary-related cases, arguing the offenses charged were alleged to have occurred on different dates and involved different alleged victims. (*Id*. at pp. 45-51; *see also* ECF Doc. 7-2, pp. 60-61.) The State argued that the motion should be denied because there was a continuous course of conduct within the same geographical region. (ECF Doc. 7-2, p. 61.) The trial court denied the motion for separate trials. (*Id*. at p. 62.) On April 29, 2015, Mr. Cole filed a pro se motion in limine, requesting a hearing to present evidence that Danielle Panagopoulos should not be allowed to testify because she was biased, untrustworthy, only capable of testifying to hearsay through third parties who could not be cross-examined, and was willing to lie to receive a lesser sentence for herself. (*Id*. at pp. 43-44.)

Before trial, Mr. Cole was presented with a plea offer with an agreed or recommended sentence of five years in prison on all three burglary cases. (ECF Doc. 7-2, pp. 63-69.) When advised of the plea offer, Mr. Cole was informed that his exposure was sixty-four years. (*Id*. at pp. 66-69.) He rejected the plea offer and the case proceeded to a jury trial on the three burglary cases. (*Id*. at pp. 65-69.)

The jury returned guilty verdicts in the three burglary-related cases on June 15, 2015, and the trial court sentenced Mr. Cole. (ECF Doc. 7-1, pp. 52-57.) In CR-14-588878-B, Mr. Cole was found guilty of burglary, theft, and criminal damaging as charged in the indictment. (*Id*. at pp. 52-53.) After merger of the burglary and theft counts, the trial court sentenced him to eight years in prison with a fine imposed on the criminal damaging count. (*Id*. at p. 52.) The trial court ordered the sentence to be served consecutive to sentences imposed in the three other cases and any other sentence. (*Id*.) In CR-14-589681-A, Mr. Cole was found guilty of burglary and theft as charged in the indictment. (*Id*. at p. 54.) After merger of the burglary and theft counts,

9

the trial court sentenced him to eight years in prison, with the sentence ordered to run consecutive to any other sentence. (*Id*.) In CR-14-590944-B, the jury found Cole guilty of four counts of burglary, four counts of theft, one count of forgery, one count of misuse of credit cards, and two counts of criminal damaging as charged in the indictment. (*Id*. at pp. 55-56.) After merger of various counts, the trial court sentenced Mr. Cole to eight years on each of four burglary counts, twelve months on the forgery count, and a fine on the criminal damaging counts. (*Id*. at p. 55.) The trial court ordered the sentences to run consecutive to each other and consecutive to any other sentence. (*Id*.) In CR-14-595523-A, the case in which Mr. Cole plead guilty to drug possession and endangering children, the trial court sentenced Mr. Cole to twelve months in prison, with the sentence to run consecutive to the sentences in his three burglary-related cases, and any other sentence. (*Id*. at p. 57.) Thus, Mr. Cole's total aggregate prison sentence was fifty years. (*Id*. at pp. 52-57.)

## B.    Direct Appeal

On June 25, 2015, through new appointed counsel, Mr. Cole filed notices of appeal with the Eighth District Court of Appeals from the judgments in the four cases. (ECF Doc. 7-1, pp. 71-75, 76-79, 80-84, 85-88.) On August 18, 2025, the Eighth District Court of Appeals granted Mr. Cole's motion to consolidate his four appeals. (*Id*. at pp. 89-93.) In his September 28, 2015 appellate brief (*id*. at pp. 94-130), he raised the following assignments of error:

1.    The jury found, against the manifest weight of the evidence, that the appellant committed the acts charged in the indictment.

2.    The evidence was not legally sufficient to sustain a guilty verdict.

3.    Joinder of the burglary charges created a severe prejudice to appellant.

4.    The trial court erred by not including a jury instruction for the lesser included burglary.

5.    The trial court erred in admitting videos as exhibits over defense's

10

objection.

6.  The trial court imposed an excessive sentence that subjects appellant to cruel and unusual punishment in violation of the Ohio State Constitution Article I, Section 9.

7.  The trial court abused its discretion by imposing a prison sentence contrary to R.C. 2929.14 and the purposes and principles of the felony sentencing guidelines and erred by imposing consecutive sentences.

(*id*. at pp. 96, 105-28).  On November 19, 2015, the State of Ohio filed its appellate brief.  (*Id.* at pp. 131-63.)  On May 12, 2016, the Eighth District Court of Appeals affirmed in part, reversed and modified in part, and remanded to the trial court.  (*Id.* at pp. 164-202.)  As to two counts of burglary, the court of appeals found there was insufficient evidence to convict Mr. Cole of second-degree felony burglaries because the state did not meet its burden to show that the victims were likely to be present at their homes at the time of the break-ins.  (*Id* at pp. 178-81.)  But the court found there was sufficient evidence to convict him of a lesser included burglary offense, a third degree felony, and remanded the case with instructions to modify Mr. Cole's conviction and resentence him on those two counts.  (*Id*. at pp. 181-82.)  Otherwise, the court of appeals overruled Mr. Cole's assignments of error and affirmed his convictions and sentence.[4] (*Id*. at pp. 201-02.)

On June 17, 2016, Mr. Cole filed a pro se notice of appeal with the Supreme Court of Ohio from all four cases (ECF Doc. 7-1, pp. 203-04) and a memorandum in support of jurisdiction (*id*. at pp. 205-61).  He raised the following propositions of law:

1.  The jury found, against the manifest weight of the evidence, that the appellant committed the acts charged in the indictment.

2.  The evidence was not legally sufficient to sustain a guilty verdict.

---

[4] The court of appeals found that the trial court's sentencing entries did not include the consecutive sentence findings.  (ECF Doc. 7-1, p. 201.)  But the court of appeals also found the trial court made the required statutory findings when imposing consecutive sentences and that the trial court's omission was a clerical mistake that could be corrected through nunc pro tunc entries on remand.  (*Id*.)

3.      Joinder of the burglary charges created a severe prejudice to appellant.

4.      The trial court erred by not including a jury instruction for the lesser included burglary.

5.      The trial court erred in admitting videos as exhibits over defense's objection.

6.      The trial court imposed an excessive sentence that subjects appellant to cruel and unusual punishment as defined in the U.S. and Ohio Constitutions.

7.      The trial court abused its discretion by imposing a prison sentence contrary to R.C. 2929.14 and the purpose and principles of felony sentencing guidelines and erred by imposing consecutive sentences.

(*Id*. at pp. 206, 211-22.)  On October 5, 2016, the Supreme Court of Ohio declined to accept jurisdiction of Mr. Cole's appeal.  (*Id*. at p. 262.)

Following the remand order from the court of appeals, on November 10, 2016, the trial court entered nunc pro tunc entries to incorporate its consecutive sentence findings.  (ECF Doc. 7-1, pp. 278-83.)  On January 16, 2018, pursuant to the remand order, in criminal case CR-14-590944-B, the trial court converted counts 26 and 29 to third-degree felonies, and resentenced Mr. Cole to thirty-six months on each of those two counts, for a new aggregate prison sentence of forty years in the four cases.[5]  (*Id*. at pp. 314-15, 322-23.)

On March 13, 2018, Mr. Cole filed a pro se notice of appeal with the Eighth District Court of Appeals from the February 21, 2018 resentencing judgment entry in CR-14-590944-B. (ECF Doc. 7-1, pp. 394-405.)  Through counsel, Mr. Cole filed his appellate brief (*id.* at pp. 406-20), raising the following assignment of error: "The trial court erred by imposing consecutive sentences" (*id.* at pp. 408, 410, 415-18.)  The State filed its appellate brief.  (*Id*. at pp. 421-32.) On July 11, 2019, the Eighth District Court of Appeals affirmed the judgment of the trial court.

---

[5] The January 16, 2018, resentencing entry was corrected on February 21, 2018, through a nunc pro tunc entry to clarify that the aggregate prison sentence in CR-14-590944-B was twenty-three years.  (ECF Doc. 7-1, pp. 322-23.)

(*Id*. at 433-42.)  The court explained that, other than the resentencing on the two burglary counts and the nunc pro tunc sentencing entries to incorporate the consecutive-sentence findings, "all other issues related to Cole's convictions, including the imposition of consecutive sentences on the four cases, were res judicata at the time of resentencing" and "[t]he limited remand did not affect the finality of [the] court's holding that the trial court properly imposed consecutive sentences nor did it open the issue of consecutive sentences to further review after resentencing." (*Id*. at p. 441.)

## C.      Petition for Post-Conviction Relief

While Mr. Cole's direct appeal was pending, he filed a pro se petition to vacate or set aside his judgment and conviction in the three burglary-related cases (CR-14-588878-B, CR-14-589681-A, and CR-14-590944-B) (ECF Doc. 7-1, pp. 263-70) along with a motion for appointment of counsel (*id.* at pp. 271-76) on April 7, 2016, raising the following claims:

1.      Cole's Sixth Amendment right to the effective assistance of trial counsel was violated as his attorney failed to call a witness whose testimony was clearly exculpatory in nature.

2.      Cole's Fifth and Fourteenth Amendment right to due process of law was violated due to prosecutorial misconduct as a witness for the state was coached into making false statements.

(*Id*. at pp. 266-70.)  On April 15, 2016, the trial court denied Mr. Cole's motion for appointment of counsel and to set aside judgment.[6]  (*Id.* at p. 277.)  On May 1, 2017, Mr. Cole filed a pro se motion for relief from the April 15, 2016 judgment, stating that the trial court had not ruled on his September 7, 2016 motion for an order directing proper service of notice of the final appealable judgment denying his motion to set aside judgment and for proper findings of fact and conclusion of law.  (*Id*. at pp. 284-88.)  On May 12, 2017, the State filed an opposition (*id.* at

---

[6] The journal entry was docketed on April 21, 2016.  (*Id.* at p. 277.)

pp. 290-92), and Mr. Cole filed a reply on May 24, 2017 (*id.* at pp. 293-94).  While his motion for relief from judgment was pending, on December 14, 2017, Mr. Cole filed a pro se notice of appeal (ECF Doc. 7-1, pp. 297-301) and motion for leave to file delayed appeal (*id.* at pp. 302-06) from the trial court's denial of his petition to vacate or set aside his judgment and conviction.[7]  On December 19, 2017, the Eighth District Court of Appeals denied Mr. Cole's motion for leave to file delayed appeal, explaining that a petition for postconviction relief is civil in nature and there is no remedy under App. R. 5(A).  (*Id.* at p. 312.)

On February 20, 2018, the trial court denied Mr. Cole's motion for relief from judgment. (*Id.* at pp. 295-96.)  The trial court also issued findings of fact and conclusions of law on February 20, 2018, regarding Mr. Cole's petition for post-conviction relief.  (*Id.* at pp. 316-21.)

On March 13, 2018, Mr. Cole filed a pro se notice of appeal to the Eighth District Court of Appeals from the trial court's denial of his post-conviction petition (ECF Doc. 7-1, pp. 324-37.)  On February 1, 2019, he filed a pro se appellate brief (*id.* at pp. 338-65), raising the following assignments of error:

1.    The Appellant was denied due process protection pursuant to the Fourteenth Amendment to the U.S. Constitution right to a fair hearing where the trial court abused its discretion and intentionally lied/falsified records when it ruled that Appellant did not submit/attach the sworn affidavits of Danielle Panagopoulos and John Cole to the postconviction petition.

2.    The trial court committed prejudicial error in its judgment, when the trial court ruled that Appellant's petition failed to contain sufficient evidence to support his request for an evidentiary hearing.

3.    The trial court erred by denying Appellant's motion for post-conviction relief without an evidentiary hearing.

---

[7] On October 31, 2017, Mr. Cole also filed a petition for writ of mandamus asking the Eighth District Court of Appeals to compel the trial judge to serve him with a copy of the April 21, 2016 denial of his petition to vacate or set aside judgment of conviction or sentence.  (ECF Doc. 7-1, p. 309.)

(*id.* at pp. 343-44).  The State filed its appellate brief (*id.* at pp. 366-76) and a corrected appellate

brief on April 2, 2019 (*id*. at pp. 375-83).  On August 1, 2019, the Eighth District Court of

Appeals reversed and remanded for further proceedings to determine whether Mr. Cole was

entitled to post-conviction relief based on arguments raised in his petition and the supporting

affidavits. [8]  (*Id.* at pp. 384-93.)  Consistent with the remand order, on October 7, 2020, the trial

court reviewed the affidavits that Mr. Cole submitted in support of his April 7, 2016 petition for

post-conviction relief that were incorrectly attached to his concurrently filed motion for

appointment of counsel.  (*Id.* at pp. 443-45.)  Following the trial court's review of the affidavits

and petition for post-conviction relief, the trial court denied the petition, finding the affidavits not

credible or persuasive.  (*Id.*)

On November 3, 2020, Mr. Cole filed a pro se notice of appeal with the Eighth District

Court of Appeals from the trial court's October 7, 2020 denial of his post-conviction petition.

(ECF Doc. 7-1, pp. 446-56.)  On February 26, 2021, through counsel, he filed his appellate brief

(*id*. at pp. 457-72), raising the following assignment of error:

> 1.  The trial court erred by dismissing the petition without an evidentiary
> hearing because the affidavits provided in a petitioner's motion to vacate
> filed pursuant to R.C. 2953.21 established a meritorious issue.

(*id.* at pp. 461, 465-71.)  On April 16, 2021, the State filed its appellate brief.  (*Id*. at pp. 473-88.)

On July 15, 2021, the court of appeals affirmed the trial court's judgment denying Mr. Cole's

post-conviction petition (*id*. at pp. 489-96), concluding that "[c]onsidering the totality of the

---

[8] The trial court denied Mr. Cole's post-conviction petition in part on the basis that he had not supported his petition
with documentary evidence.  (ECF Doc. 7-1, p. 391.)  Mr. Cole's post-conviction petition did not have affidavits
attached but they were attached to his contemporaneously filed motion for appointment of counsel.  (*Id.*)

evidence presented at trial, [it] [could not] conclude that the trial court abused its discretion in finding the affiants to be incredible without a hearing" (*id*. at p. 496).

On August 9, 2021, Mr. Cole filed a pro se notice of appeal with the Supreme Court of Ohio (ECF Doc. 7-1, pp. 497-98) and a memorandum in support of jurisdiction (*id.* at pp. 499-526) from the Eighth District Court of Appeals's July 15, 2021 judgment.  In his memorandum in support of jurisdiction, Mr. Cole raised the following propositions of law:

1.     Cole's right to the effective assistance of counsel and due process of law, under the Sixth and Fourteenth Amendments to the United States Constitution and, Article One, Section Ten of the Ohio Constitution, were violated where trial counsel failed to call a material witness to testify, and where the State of Ohio suborned perjury to sustain convictions, therefore, it was prejudicial error to deny Cole's petition for postconviction relief without a hearing and prejudicial error to affirm such a denial.

2.     The judgment of the trial court was not a final appealable order.

(*Id*. at pp. 500, 505-11.)  On October 26, 2021, the Supreme Court of Ohio declined to accept jurisdiction of Mr. Cole's appeal.  (*Id*. at p. 527.)

## D.     Federal Habeas Corpus Petition

Mr. Cole raises the following five grounds for relief in his Petition:

**Ground One:** Jury found against the manifest weight of the evidence, that the Petitioner committed the acts charged in the Indictment.  The evidence was not legally sufficient to sustain a guilty verdict.  This violated the 4th, 6th and 14th amendments of the United States Constitution, Federal Rule of Criminal Procedure 6 & 7, Criminal Rule 7, Federal Civil Procedure § 2392, 5-27, 346.

**Ground Two:** The trial court erred by not including a jury instruction for the lesser included burglary.

**Ground Three**: The trial court erred in admitting videos as exhibits over Petitioner's objection.

**Ground Four**: The trial court abused its discretion by imposing a prison sentence contrary to R.C. 2929.14 and the purpose and principles of felony sentencing guidelines and erred by imposing consecutive sentences.  The excessive sentence subjects Petitioner to Cruel and Unusual Punishment as defined in the U.S. Constitution.

**Ground Five**: The State of Ohio failed to provide Petitioner with effective assistance of trial and appellate counsel.

(ECF Doc. 1, pp. 3-7.)

### III.    Law & Analysis

### A.    Standard of Review Under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104–132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies."  *Id.* (citing 28 U.S.C. §§ 2254(a), (b), (c)).  If an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application "shall not be granted" unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007).  The burden of proof rests with the petitioner.  *See Cullen*, 563 U.S. at 181.

**B.      Legal Standard for Procedural Default**

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  *See* 28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  *See* 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").

To satisfy the fair presentation requirement, a habeas petitioner must present both the facts and legal theories underpinning his claims to the state courts.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Baldwin v. Reese*, 541 U.S. 27, 33-34 (2004); *Franklin v. Rose*, 811 F.2d 322, 324-25 (6th Cir. 1987).  A constitutional claim for relief must also be presented to the state's highest court to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

A petitioner must also meet certain procedural requirements to have his claims reviewed in federal court.  *See Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still

18

available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, procedural default applies where state court remedies are no longer available.  *See Williams*, 460 F.3d at 806.

Procedural default may occur in two ways.  First, a petitioner may procedurally default a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.*  In *Maupin v. Smith,* the Sixth Circuit articulated a four-prong analysis to be used when determining whether a claim is procedurally barred due to failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim, and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *See Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *State v. Moreland*, 552 N.E. 2d 894, 899 (Ohio 1990) (finding failure to present a claim to a state court of appeals constituted

a waiver). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806. Thus, even if the exhaustion requirement is technically satisfied because no state remedies remain available to the petitioner, the petitioner's prior failure to present those claims for consideration in state court may cause a procedural default that bars federal court review of the claims. *See Williams,* 460 F.3d at 806 (citing *Coleman v. Thompson,* 501 U.S. 722, 732 (1991)).

To overcome procedural default, a petitioner must: (1) show cause for the default and demonstrate that actual prejudice resulted from the alleged violation of federal law; or (2) show that there will be a fundamental miscarriage of justice if the claims are not considered. *See Coleman*, 501 U.S. at 750. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

## C.    Ground One

In Ground One, Petitioner argues there was insufficient evidence to convict him of the burglary offenses.[9]  (ECF Doc. 1, p. 3; ECF Doc. 11, pp. 2-8.)  Respondent argues that Mr. Cole's sufficiency of the evidence claim is without merit.  (ECF Doc. 7, pp. 25-34.)

---

[9] The heading for Ground One also asserts that the jury verdict was against the manifest weight of the evidence. (ECF Doc. 1, p. 3; ECF Doc. 11, p. 2.) Mr. Cole has not developed a manifest weight of the evidence argument, which is deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal citations omitted) (alterations in original). Such a claim would also be subject to dismissal because manifest weight of the evidence claims arise under state law and are not cognizable on federal habeas review. *See Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983) (stating the Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those convicted without sufficient proof to allow a finding of guilt beyond a reasonable doubt), *cert. denied*, 464 U.S. 951 (1983); *Gulley v. Hall*, No. 5:09-CV-00441, 2010 WL 1438809, at *8 (N.D. Ohio Mar. 22, 2010) ("The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without enough proof to allow a rational trier of fact to find guilt beyond a reasonable doubt.") (citing *Walker*), *report and recommendation adopted*, No. 5:09CV441, 2010 WL 1438807 (N.D. Ohio Apr. 9, 2010).

1.      **Legal Framework for Sufficiency of Evidence Claims**

A "sufficiency of the evidence" claim is cognizable on federal habeas review.  *See In re Winship*, 397 U.S. 358, 364 (1970).  In reviewing such a claim, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).   In determining the sufficiency of the evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury."  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009); *see also Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003).  This "inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit."  *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original).  "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt."  *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal citations, quotations, and alterations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies to questions regarding the sufficiency of the evidence.  *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).  "First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; [and] second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'"  *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)).  The Sixth Circuit has explained the two-step deferential analysis as follows:

First, we must ask whether the evidence itself was sufficient to convict under Jackson. The inquiry ends if the panel determines that there was sufficient evidence to convict [the petitioner].  If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt.

*Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010).  Thus, even if this Court were "to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable."  *Brown*, 567 F.3d at 205 (citing 28 U.S.C. § 2254(d)(2)) (emphasis in original)*; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

The undersigned now turns to Mr. Cole's sufficiency of the evidence claim.

### 2.    The Evidence was Sufficient to Support the Burglary Convictions and the State Court's Adjudication of the Claim was Not Unreasonable

Mr. Cole contends that the evidence was insufficient to convict him of the burglary offenses.  (ECF Doc. 1, p. 3; ECF Doc. 11, pp. 2-8.)  On direct appeal, the state court of appeals considered the merits of Mr. Cole's sufficiency of the evidence claim and found it to be without merit, except as to two second-degree burglary counts,[10] explaining:

{¶ 32} In the first and second assignments of error, Cole argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶ 33} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the prosecution's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and sufficiency of evidence review require the same analysis. *Cleveland v. Pate,* 8th Dist. Cuyahoga No. 99321, 2013–Ohio–5571, ¶ 12, citing *State v. Mitchell,* 8th Dist. Cuyahoga No. 95095, 2011–Ohio–1241.

{¶ 34} A challenge to the sufficiency of the evidence supporting a conviction requires the court to determine whether the prosecution has met its burden of production at trial. *State v. Givan,* 8th Dist. Cuyahoga No. 94609, 2011–Ohio–100,

---

[10] As explained by the court of appeals, although the evidence was not sufficient to convict Mr. Cole of two second-degree burglary felony counts (Dallos and Kwast burglaries), there was sufficient evidence to convict him of third-degree burglary felonies on those two counts.  (ECF Doc. 7-1, pp. 178-82.)

¶ 13, citing *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). On review for sufficiency, courts are not to assess whether the prosecution's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *Id.,* citing *id.* The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Vickers,* 8th Dist. Cuyahoga No. 97365, 2013–Ohio–1337, ¶ 17, citing *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 35} In *State v. Wilson,* 113 Ohio St.3d 382, 2007–Ohio–2202, 865 N.E.2d 1264, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as enunciated in *Thompkins:*

> In *Thompkins,* the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id.* at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386–387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id.* at 387, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

*Id.* at ¶ 25, 678 N.E.2d 541.

{¶ 36} An appellate court may not merely substitute its view for that of the factfinder, but must find that "'in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Walker,* 8th Dist. Cuyahoga No. 99239, 2013–Ohio–3522, ¶ 36, quoting *Thompkins* at 387, 678 N.E.2d 541. "Accordingly, reversal on manifest weight grounds is reserved for 'the exceptional case that the evidence weighs heavily against the conviction.' " *Id.,* quoting *id.*

## 1. "Likely to be Present" Element of Burglary

{¶ 37} In CR–14–590944–B, Cole was convicted of one count of burglary as to Joseph Dallos and one count of burglary as to Jay Kwast, in violation of R.C. 2911.12(A)(2), which provides the following:

No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person * * * is present or likely to be present, with purpose to commit in the habitation any criminal offense.

{¶ 38} Danielle testified to Cole's participation in the burglaries at the Dallos and Kwast homes. Circumstantial evidence also linked Cole to the burglaries at these houses, including the neighbor who saw an unfamiliar black SUV parked in front of Dallos's house. But we find that the state failed to present sufficient evidence of the "present or likely to be present" element of R.C. 2911.12(A)(2).

{¶ 39} Both Dallos and Kwast testified that they were at work when the burglaries occurred; Dallos's wife was also at work and Kwast lived alone. The Ohio Supreme Court has recognized that the state can establish the "likely to be present" element of burglary under R.C. 2911.12(A)(2) by showing that the occupants of the dwelling were "in and out on the day in question" and were temporarily absent when the burglary occurred. *State v. Kilby,* 50 Ohio St.2d 21, 361 N.E.2d 1336 (1977), paragraph one of the syllabus. Conversely, Ohio courts have also found that "where the occupants of a house are absent as part of their regular workday, they are not likely to be present during the day." *State v. McCoy,* 10th Dist. Franklin No. 07AP–769, 2008–Ohio–3293, ¶ 23, citing *State v. Frock,* 2d Dist. Clark No.2004CA76, 2006–Ohio–1254. The state must adduce specific evidence that the occupants of the dwelling were present or likely to be present at the time the burglary occurred.

{¶ 40} This court has discussed the "likely to be present" element of the crime of second-degree burglary as follows:

A person is likely to be present when a consideration of all the circumstances would seem to justify a logical expectation that a person could be present. * * * In determining whether persons were present or likely to be present under R.C. 2911.12(A)(2), "the defendant's knowledge concerning habitation is not material. The issue is not whether the burglar subjectively believed that persons were likely to be there, but whether it was objectively likely." * * * Merely showing that people dwelled in the residence is insufficient; the state must adduce specific evidence that the people were present or likely to be present at the time of the burglary. * * *

*State v. Palmer,* 8th Dist. Cuyahoga No. 89957, 2008–Ohio–2937, ¶ 13.

{¶ 41} In *State v. Richardson,* 8th Dist. Cuyahoga No. 100115, 2014–Ohio–2055, ¶ 23, this court found insufficient evidence of second-degree burglary when the state failed to elicit testimony to establish the "likely to be present" element of the crime. This court noted that, on the day of the burglary, the victim left for work at

7:00 a.m., returned home at 3:00 p.m., and routinely worked from 8:00 a.m. until 2:00 or 3:00 p.m. Because the burglary occurred shortly before noon on a workday, this court determined that the victim was not "likely to be present." *Id.*

{¶ 42} Dallos testified that he left for work at 6:30 a.m. and his wife left shortly thereafter. Around 11:00 a.m. he received a phone call that his house had been broken into and both he and his wife returned home. The state did not elicit any testimony that the Dalloses routinely returned home during the workday or that anyone else lived at their home; therefore, the state failed to show that Dallos were likely to be present at the time the burglary occurred.

{¶ 43} Kwast testified that he lived alone. "Where a person individually occupies an apartment and his [or her] usual and ordinary work habits take him [or her] away from that apartment regularly, during certain hours of the day, at a time there is minimum likelihood that a person will be present therein." *State v. Meisenhelder,* 8th Dist. Cuyahoga No. 76764, 2000 Ohio App. LEXIS 4745, *14,2000 WL 1513695 (Oct. 12, 2000), quoting *State v. Lockhart,* 115 Ohio App.3d 370, 373, 685 N.E.2d 564 (8th Dist.). Kwast testified he left for work at 7:30 or 8:00 in the morning and did not return until 6:00 p.m. on the day of the burglary. The state failed to elicit any evidence that Kwast was likely to be present at the time the burglary occurred.

{¶ 44} Again, the state had the burden showing that victims were likely to be present at their homes at the time of the break-ins. *Meisenhelder* at *14–15. The state did not meet its burden in this case as to the burglary counts that related to the Dalloses and Kwast.

{¶ 45} That being said, although the state failed to present sufficient evidence to sustain a conviction of burglary under R.C. 2911.12(A)(2), Cole may be convicted of the lesser included offense of burglary under R.C. 2911.12(A)(3). Burglary under R.C. 2911.12(A)(3) is a lesser included offense of burglary under R.C. 2911.12(A)(2) because it contains all the elements of R.C. 2911.12(A)(2) *except* the presence or likely presence of another. *State v. Butler,* 8th Dist. Cuyahoga No. 97649, 2012–Ohio–4152, ¶ 18.

{¶ 46} In this case, the state produced sufficient evidence on all of the elements except for "present or likely to be present"; thus, we find that the evidence supports a finding of guilt under R.C. 2911.12(A)(3), a third-degree felony. Pursuant to App.R. 12(A)(1)(a), this court has the authority to modify the trial court's judgment. Therefore, we remand with instructions for the court to modify the judgment of conviction to find Cole guilty of burglary under R.C. 2911.12(A)(3) and to resentence him on Counts 26 and 29 in Case No. CR–590944–B. *See Richardson* at ¶ 26, 35, citing *Butler* at ¶ 18.

25

**2. Remaining Convictions**

{¶ 47} Cole further claims that no physical evidence linked him to the crimes. But "[p]roof of guilt may be made by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value." *State v. Zadar,* 8th Dist. Cuyahoga No. 94698, 2011–Ohio–1060, ¶ 18, citing *State v. Nicely,* 39 Ohio St.3d 147, 529 N.E.2d 1236 (1988).

{¶ 48} In this case, the state presented extensive evidence, which established Cole's participation in the burglaries. The state's evidence showed that Cole and his brother broke into the Readinger house and stole the victim's purse and subsequently used her credit card at two gas stations. A relative of Cole's worked at one of the gas stations and identified Cole as the user of the stolen credit card. Danielle, Cole's girlfriend, confirmed that Cole participated in the burglary and used the stolen credit card.

{¶ 49} Detective Shapiro recognized Cole in surveillance video footage as the driver of the black SUV in the Vietses burglary. The Vietses son also identified Cole as the driver. There was also sufficient evidence linking Cole to the Fassett burglary. Surveillance video showed a black SUV casing the house before and during the burglary. Danielle admitted she and John pawned the jewelry that was taken from the house. And the state submitted evidence of Cole exchanging text messages with John about the stolen goods shortly after the burglary.

{¶ 50} The final burglary, which occurred in Rocky River, followed the same pattern as the previous five, with evidence that Danielle pawned the stolen items with John while Cole waited in the car. This evidence, viewed in a light most favorable to the state, constituted sufficient evidence to support Cole's convictions.

{¶ 51} We also conclude that this is not the exceptional case where the evidence weighs heavily against the convictions. Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. The trier of fact is best able "'to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *State v. Kurtz,* 8th Dist. Cuyahoga No. 99103, 2013–Ohio–2999, ¶ 26, quoting *Wilson,* 113 Ohio St.3d 382, 2007–Ohio–2202, 865 N.E.2d 1264, ¶ 24.

{¶ 52} Cole attacks Danielle's credibility, claiming that her agreement to testify against him as part of her plea deal with the state motivated her to lie. But the jury was fully aware of the plea agreement and defense counsel was afforded the opportunity to cross-examine, and extensively cross-examined, Danielle on the specifics of her plea deal. Thus, the jury was well aware of the circumstances surrounding Danielle's plea and apparently still chose to believe Danielle; such is the province of the jury.

{¶ 53} Thus, we cannot say that Cole's convictions were not supported by sufficient evidence or that the jury clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. Accordingly, we overrule the first assignment of error, except as to the two counts of burglary as modified. As to those two counts, the first assignment of error is moot. We sustain the second assignment of error in part.

*Cole*, 2016 WL 2756631, at * 5-9; (*see also* ECF Doc. 7-1, pp. 176-84).

Mr. Cole argues that the State failed to provide sufficient evidence that he committed the burglaries, asserting that the evidence upon which the State relied to prove its case is not direct evidence of his involvement and/or is not reliable.  (ECF Doc. 11, pp. 5-8.)  He acknowledges that Ms. Panagopoulos's testimony "puts [him] at the scene of the Burglaries," but asserts that her testimony is the only testimony placing him at the burglaries and should not be deemed credible or trustworthy.  (ECF Doc. 11, pp. 2-5.)  He argues that Ms. Panagopoulos was not a credible or trustworthy witness because she received consideration for her testimony, admitted lying to the police, admitted being a heroin addict, admitted writing approximately 70 letters to Mr. Cole where she apologized for lying, and signed an affidavit after his conviction and sentence admitting that she had lied regarding his involvement in the crimes.  (*Id.*)

In assessing Mr. Cole's sufficiency of the evidence claim, this Court may not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown*, 567 F.3d at 205.  But that is precisely what Mr. Cole's arguments regarding Ms. Panagopoulos's credibility ask this Court to do.  *See, e.g., Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) ("An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.")  Moreover, the court of appeals addressed similar arguments challenging Ms. Panagopoulos's credibility as follows:

{¶ 52} Cole attacks Danielle's credibility, claiming that her agreement to testify against him as part of her plea deal with the state motivated her to lie. But the jury

> was fully aware of the plea agreement and defense counsel was afforded the opportunity to cross-examine, and extensively cross-examined, Danielle on the specifics of her plea deal. Thus, the jury was well aware of the circumstances surrounding Danielle's plea and apparently still chose to believe Danielle; such is the province of the jury.

(ECF Doc. 7-1, p. 184, ¶ 52.)[11]  Ms. Panagopoulos was also cross-examined regarding letters she sent to Mr. Cole, where she said she would not testify against him, she was sorry for telling the police what she told them, and that she would make it right.  (ECF Doc. 7-2, pp. 767-73.)  Under cross-examination, she admitted to lying in those letters.  (*Id.*)  The jury heard her testimony regarding the letters and her admission that her statements in the letters were lies.  (*Id.*)  The jury considered the evidence presented and evaluated the testimony and credibility of all witnesses, including Ms. Panagopoulos.  (ECF Doc. 7-2, pp. 735-82.)  Both the jury's findings of guilt and the appellate court's conclusions regarding the sufficiency of the evidence to support those findings are entitled to deference here.  *See Brown*, 567 F.3d at 205.

Mr. Cole also argues the evidence presented at trial was insufficient to convict him of the burglaries because there was no fingerprint or other physical evidence showing he was at the burglarized homes or linking him to other evidence, like the book with street names or the cell phone found in Ms. Panagopoulos's vehicle.  (ECF Doc. 11, pp. 5-6.)  He further argues that there are inconsistencies in the video evidence that allegedly shows him using a stolen credit card, and asserts that there was no evidence proving he knew the credit card was taken from someone's home or that he took the credit card from someone's house.  (*Id*. at pp. 6-7.)  These arguments again ask this Court to reweigh the evidence and substitute its judgment for that of the jury, which it may not do.  *See Brown*, 567 F.3d at 205.  In fact, it is well established that

---

[11] Notably, the court of appeals specifically assessed the credibility of Ms. Panagopoulos's testimony as part of its "manifest weight of the evidence" analysis.  (ECF Doc. 7-1, pp. 183-84, ¶¶ 51-52.)  As noted in footnote 9, *supra*, the manifest weight claim was waived in these proceedings and is not cognizable on federal habeas review.

circumstantial evidence alone "is sufficient to support a conviction," *Johnson*, 200 F.3d at 992,

and "is entitled to equal weight as direct evidence," *Durr*, 487 F.3d at 449.

Here, the evidence presented at trial and highlighted by the state court of appeals in its

analysis included not only the testimony of Ms. Panagopoulos regarding Mr. Cole's participation

in the burglaries, but also: testimony from a relative identifying Mr. Cole as the user of a credit

card stolen in one of the robberies; testimony from a robbery victim and a detective identifying

Mr. Cole as the driver of the black SUV captured on surveillance video footage for a robbery; a

surveillance video showing a black SUV casing a house before and during a burglary; and text

messages between Mr. Cole and his co-defendant discussing stolen goods shortly after a

burglary.  (ECF Doc. 7-1, pp. 182-83, ¶¶ 47-50.)  The state court concluded that all the evidence,

viewed in the light most favorable to the state, was sufficient to support Mr. Cole's convictions.

(*Id.* at p. 183, ¶ 50.)  Again, both the jury's findings and the appellate court's conclusions

regarding sufficiency are entitled to deference.  *See Brown*, 567 F.3d at 205.

Mr. Cole's additional arguments regarding John Cole's post-conviction affidavit asserting

that Ms. Panagopoulos was the real driver in the burglaries (ECF Doc. 11, p. 3; *see* ECF Doc. 7-

1, p. 275 (John Cole affidavit)) cannot impact the present analysis.  A sufficiency of the evidence

determination is based on a finding of "whether the *record evidence* could reasonably support a

finding of guilt beyond a reasonable doubt."  *Jackson*, 443 U.S. at 318 (emphasis added).

Evidence that was not presented at trial is irrelevant to that determination.

In reviewing a claim that there was insufficient evidence to support a petitioner's

convictions, this Court's inquiry is not focused on whether the jury "made the correct guilt or

innocence determination, but rather whether it made a *rational* decision to convict or acquit."

*Herrera*, 506 U.S. at 402.  When assessing whether "*any* rational trier of fact could have found

29

the essential elements of the crime beyond a reasonable doubt," the Court must view "the evidence in the light most favorable to the prosecution." *See Jackson*, 443 U.S. at 319.  And "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.  Here, when the whole evidentiary record is viewed in the light most favorable to the State, the undersigned concludes that "a rational trier of fact could reasonably have found" that Mr. Cole committed the burglaries and Mr. Cole's sufficiency claim is without merit.  *Id.*  This Court may end its inquiry here.  *See Stewart*, 595 F.3d at 653 (explaining that "[t]he inquiry ends if the [court] determines that there was sufficient evidence to convict [the petitioner]").

Even if this Court were "to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (emphasis in original); *see also White*, 602 F.3d at 710.  Under the second layer of deference applied to federal habeas review of sufficiency claims under AEDPA, the question becomes "whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [Mr. Cole] guilty beyond a reasonable doubt based upon the evidence introduced at trial." *Brown*, 567 F.3d at 205 (emphasis in original).  While Mr. Cole contends that the evidence was not sufficient to convict him, he does not directly argue that the determination of the state court of appeals was unreasonable, and the undersigned's review of the state court adjudication of Mr. Cole's sufficiency of the evidence claim does not reveal that it "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby v. Dixon*, 565 U.S.

23, 24 (2011) (quoting *Harrington*, 562 U.S. at 103). Indeed, "even a strong case for relief does

not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102.

For the reasons set forth above, applying the doubly deferential standard for sufficiency

of the evidence claims, the undersigned finds no merit to the claim in Ground One. When the

evidence is viewed in the light most favorable to the State, it does not reflect that "no rational

trier of fact could have agreed with the jury" that Mr. Cole was guilty of burglaries. *Coleman*,

566 U.S. at 651. Further, the undersigned concludes that this Court should defer to sufficiency

findings of the state court of appeals because it was not unreasonable. *Brown*, 567 F.3d at 205.

Accordingly, the undersigned recommends that the Court **DENY** Ground One of the Petition.

**D.     Ground Two**

In Ground Two, Petitioner argues the trial court erred by not including a jury instruction

for the lesser included offense of third-degree burglary. (ECF Doc. 1, p. 4; ECF Doc. 11, pp. 9-

10.) Respondent argues that Ground Two is not cognizable on federal habeas review because it

challenges an interpretation of state law and that it lacks merit because Mr. Cole cannot show

that a fundamental miscarriage of justice resulted from the trial court's denial of the requested

jury instruction. (ECF Doc. 7, pp. 34-36.)

**1.     Habeas Review of State Law Finding Regarding Jury Instructions**

"[I]t is not the province of a federal habeas court to reexamine state-court determinations

on state-law questions. In conducting habeas review, a federal court is limited to deciding

whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v.

McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S.

764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle*, 456

31

U.S. at 121 n.21 ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

"Because 'federal habeas corpus relief does not lie for errors of state law,'" federal courts "may grant the writ based on errors in state jury instructions only in extraordinary cases." *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007) (quoting *Lewis*, 497 U.S. at 780); *see also Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990) (explaining that granting federal habeas relief and setting aside a conviction based on a state trial court's failure to give a jury instruction based on its interpretation of its own laws would only be warranted "under the most unusual circumstances" because "it is not the function of a federal habeas court to correct errors in state law"); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) ("Generally speaking, a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief.") (citing 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67-68). Additionally, the Sixth Circuit has held that "the failure to instruct on lesser included offenses in noncapital cases [is not] such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Bagby*, 894 F.2d at 797; *see also Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (explaining that the Sixth Circuit has held that "the Constitution does not require a lesser-included offense instruction in non-capital cases") (citing *Bagby*, 894 F.2d at 795-97).

Thus, "[t]o warrant habeas relief, 'jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair. The burden is even greater than that required to demonstrate plain error on appeal.'" *Buell v. Mitchell*, 274 F.3d 337, 355 (6th Cir. 2001). Therefore, the question on federal habeas review is not whether the state trial court failed to cure a particular ailing jury instruction, but "whether the

32

ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Daniels*, 501 F.3d at 741 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

### 2.     State Court Adjudication of Jury Instruction Challenge

Mr. Cole's jury instruction challenge was adjudicated by the state court of appeals in his direct appeal, which made the following findings:

> {¶ 65} In the fourth assignment of error, Cole argues that the trial court erred when it refused to instruct the jury on the lesser included offense of burglary. Cole, who was convicted of second-degree felony burglary under R.C. 2911.12(A)(2), claims that the trial court should have instructed the jury that they could consider whether he was instead guilty of third-degree felony burglary under R.C. 2911.12(A)(3). Because we have already found that there was insufficient evidence to support Cole's convictions for burglary under R.C. 2911.12(A)(2) as to the victims, the Dalloses and Kwast, we will not consider those convictions under this assignment of error.

> {¶ 66} "An instruction on a lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense." *State v. Carter,* 89 Ohio St.3d 593, 600, 734 N.E.2d 345 (2000). Moreover, the lesser included offense instruction is not warranted every time some evidence is presented to support the inferior offense. *State v. Shane,* 63 Ohio St.3d 630, 632, 590 N.E.2d 272 (1992). Rather, a court must find "sufficient evidence" to "allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense." (Emphasis sic.). *Id.* at 632–633, 590 N.E.2d 272. In making the determination of whether the instruction was required, the reviewing court must view the evidence in a light most favorable to the defendant. *State v. Smith,* 89 Ohio St.3d 323, 331, 731 N.E.2d 645 (2000).

> {¶ 67} During trial, Cole requested the court instruct on third-degree felony burglary, which would omit the element of "present, or likely to be present" in R.C. 2911.12. But having reviewed the record and given the totality of the evidence, we cannot say that the jury could have reasonably acquitted Cole of second-degree felony burglary under R.C. 2911.12(A)(2) and found him guilty of the lesser included offense of third-degree felony burglary under R.C. 2911.12(A)(3) as to the burglaries at the Viets, Fassett, and Blahovec homes.[1] Viets left her house for a doctor's appointment, the Fassetts went out to lunch, and Blahovec went to an exercise class. Any of these victims could have returned to their homes at any time. Again, where the state proves that an occupied structure is a permanent dwelling house that is regularly inhabited, the occupying family was in and out on the day in question, and the house was burglarized when the family was temporarily absent, then the state has presented sufficient evidence to support that element of present

or likely to be present. *See Lockhart,* 115 Ohio App.3d at 373, 685 N.E.2d 564 (8th Dist.1996), citing *Kilby,* 50 Ohio St.2d 21, 361 N.E.2d 1336 (1977), at paragraph one of the syllabus.

> [FN 1 - Cole was charged with burglary under R.C. 2911.12(A)(1) as to the Readingers because they were home at the time of the burglary.]

{¶ 68} In light of the above, the trial court did not err in denying Cole's jury instruction request. The fourth assignment of error is overruled.

*Cole,* 2016 WL 2756631, at * 11-12; (*see also* ECF Doc. 7-1, pp. 188-90).

### 3. Ground Two is Non-Cognizable and/or Without Merit

In Ground Two, Petitioner argues that the trial court erred by not including a jury instruction for the lesser included offense of third-degree burglary. (ECF Doc. 1, p. 4; ECF Doc. 11, pp. 9-10.) To the extent Mr. Cole is seeking federal habeas relief because the denial of his request for a lesser included offense jury instruction violated state law, he fails to state a claim upon which federal habeas relief may be granted. As explained above, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle,* 502 U.S. at 67-68. Accordingly, to the extent Ground Two is based on violations of state law, the undersigned recommends that the Court **DISMISS** that claim as non-cognizable.

Conversely, to the extent Mr. Cole is arguing that the trial court denied his due process right to a fair trial when it failed to provide the lesser included offense jury instruction, the undersigned concludes that the argument must fail on its merits. For Mr. Cole's constitutional argument to succeed, he must show not only that the jury instruction was "erroneous" but that it was "so infirm that [it] rendered the entire trial fundamentally unfair." *Buell,* 274 F.3d at 355 (citation and internal quotation marks omitted); *see also Daniels,* 501 F.3d at 741 (stating question on federal habeas review is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process") (quoting *Cupp,* 414 U.S. at 147).

Mr. Cole is unable to show how the trial court's failure to provide the requested jury instruction as to these burglaries rendered his entire trial fundamentally unfair.  He argues only that the "[o]pening statement by the State and video shows that whoever was burglarizing these homes purposley [sic] waited until there was no one home before they entered" and "it is for the jury to decide whether these crimes [met] the language of the F2 or F3 Burglaries."  (ECF Doc. 11, p. 9.)  But the pertinent element was not whether the perpetrators waited to see if anyone was home; it was whether the victims were "present or likely to be present."  (ECF Doc. 7-1, pp 189-90, ¶ 67.)  As the court of appeals concluded, the evidence presented at trial indicated that Viets, Fassetts, and Blahovec could have returned to their homes at any time.[12]  (ECF Doc. 7-1, p. 190, ¶ 67.)  Given the record before the Court, the undersigned finds Mr. Cole has not met his burden to show that the trial court's decision not to instruct the jury on the lesser burglary offenses rendered his trial fundamentally unfair.

Turning to the requirements of section 2254(d)(1) and (d)(2), the undersigned also finds Mr. Cole cannot show that the court of appeals' determination was contrary to or involved an unreasonable application of federal law, or that the state court's adjudication of his claim resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington*, 562 U.S. at 100; *Matthews*, 486 F.3d at 889.

First, Mr. Cole has not shown that the determination of the state court of appeals was contrary to or involved an unreasonable application of clearly established federal law.  He does

---

[12] The state court of appeals observed that the victims in the Readinger burglary were home at the time of the burglary.  (ECF Doc. 7-1, p. 190, n.1.)  Mr. Cole thus cannot show that failure to instruct on the lesser burglary offense as to this burglary resulted in a fundamentally unfair trial.  The state court also found it unnecessary to address the jury instruction assignment of error as to Dalloses and Kwast burglaries, since those convictions were remanded so that Mr. Cole could be resentenced under the lesser third-degree burglary offense.  (*Id.* at pp. 188-89.)

not identify applicable law in his briefing, nor does he offer related argument. While the

Supreme Court held in *Beck v. Alabama*, 447 U.S. 625 (1980), that it is unconstitutional to

impose the death penalty where a jury was not permitted to consider a lesser included non-capital

offense that was supported by the evidence, it did not decide "whether the Due Process Clause

would require the giving of such [lesser included offense] instructions in a noncapital case." *Id*.

at 637, 638, n.14. The Sixth Circuit has explained that *Beck* does not require a "lesser-included

offense instruction . . . when the evidence does not support it." *Campbell*, 260 F.3d at 541. The

Sixth Circuit also held that "the failure to instruct on lesser included offenses in noncapital cases

[is not] such a fundamental defect as inherently results in a miscarriage of justice or an omission

inconsistent with the rudimentary demands of fair procedure." *Bagby*, 894 F.2d at 797. Given

the foregoing, the undersigned finds Mr. Cole has failed to show that the state court's finding

was contrary to or involved an unreasonable application of clearly established federal law.

Second, Mr. Cole has not shown that the state appellate court's adjudication of his claim

was based on an unreasonable determination of the facts in light of the evidence presented to the

state courts. Upon review of the record the state court of appeals determined:

> [G]iven the totality of the evidence, we cannot say that the jury could have
> reasonably acquitted Cole of second-degree felony burglary under R.C.
> 2911.12(A)(2) and found him guilty of the lesser included offense of third-degree
> felony burglary under R.C. 2911.12(A)(3) as to the burglaries at the Viets, Fassett,
> and Blahovec homes.[] Viets left her house for a doctor's appointment, the Fassetts
> went out to lunch, and Blahovec went to an exercise class. Any of these victims
> could have returned to their homes at any time. Again, where the state proves that
> an occupied structure is a permanent dwelling house that is regularly inhabited, the
> occupying family was in and out on the day in question, and the house was
> burglarized when the family was temporarily absent, then the state has presented
> sufficient evidence to support that element of present or likely to be present. *See
> Lockhart,* 115 Ohio App.3d at 373, 685 N.E.2d 564 (8th Dist.1996), citing *Kilby,*
> 50 Ohio St.2d 21, 361 N.E.2d 1336 (1977), at paragraph one of the syllabus.

*Cole*, 2016 WL 2756631, at * 12 (footnote deleted); (*see also* ECF Doc. 7-1, pp. 189-90, ¶ 67).

The state court's factual findings are entitled to a presumption of correctness unless rebutted by

clear and convincing evidence, *see* 28 U.S.C. § 2254(e)(1), and the Supreme Court has explained

that "a state court's interpretation of state law, including one announced on direct appeal of the

challenged conviction, binds a federal court sitting in habeas corpus," *see Bradshaw v. Richey*,

546 U.S. 74, 76 (2005) (per curiam) (citations omitted)).  Mr. Cole has not rebutted the state

court of appeals' factual findings by clear and convincing evidence and this federal habeas court

is bound by the state court of appeals's interpretation of Ohio law.

While Mr. Cole argues that the facts support a different result, the Supreme Court has

explained that "a state prisoner seeking a writ of habeas corpus from a federal court 'must show

that the state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing law beyond

any possibility for fairminded disagreement.'" *Bobby*, 565 U.S. at 24 (quoting *Harrington*, 562

U.S. at 103).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion

was unreasonable." *Harrington*, 562 U.S. at 102.  The "standard is difficult to meet" and "was

meant to be" because "habeas corpus is a 'guard against extreme malfunctions in the state

criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at

102–03 (quoting *Jackson*, 443 U.S. at 332 n.5).  In short, "[a] state court's determination that a

claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on

the correctness of the state court's decision." *Id*. at 101 (quoting *Yarborough v. Alvarado*, 541

U.S. 652, 664 (2004)).  Mr. Cole has not overcome the high deference afforded state court

determinations under AEDPA.

For the reasons set forth above, to the extent Mr. Cole seeks to assert a federal constitutional claim in Ground Two, the undersigned recommends that the Court **DENY** Ground Two on its merits.

## E.    Ground Three

In Ground Three, Petitioner argues the trial court erred by admitting two videos over the defense's objection.  (ECF Doc. 1, p. 4; ECF Doc. 11, pp. 10-15.)  One video pertained to the Viets burglary and was video from a Sunoco gas station near the Viets home that was reviewed and downloaded by Nathan Viets, who was home from college at the time of the burglary.  (ECF Doc. 11, pp. 10-11; ECF Doc. 7-1, p. 190.)  Nathan Viets viewed the video footage from the Sunoco station, then downloaded and saved certain portions of the video footage.  (ECF Doc. 11, pp. 10-11.)  The second video pertained to the Fassett burglary; it was video footage from the Aleksin house, a neighbor of the Fassetts.  (ECF Doc. 11, p. 11; ECF Doc. 7-1, p. 190.) Petitioner argues that the videos were not properly authenticated and/or that their admission violated his due process rights under the Fourteenth Amendment because the State did not secure the original videos.  (ECF Doc. 1, p. 4; ECF Doc. 11, pp. 10-15.)  Respondent argues that Ground Three is not cognizable on federal habeas review because it presents an issue of state law and further that Petitioner cannot demonstrate that his constitutional due process rights were violated as a result of the admission of the video evidence.  (ECF Doc. 7, pp. 36-39.)

### 1.    Federal Habeas Relief Based on State Law Evidentiary Rulings

As a general matter, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle*, 502 U.S. at 67-68 (citing 28 U.S.C. § 2241); s*ee also Lewis*, 497 U.S. at 780

("[F]ederal habeas corpus relief does not lie for errors of state law[.]"); *Engle*, 456 U.S. at 121 n.21 ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (internal citation omitted)).

A "state appellate court's interpretation of its own law and evidentiary rules, 'including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Chambers v. Artis*, No. 22-1247, 2022 WL 18542503, at *2 (6th Cir. Nov. 3, 2022), *cert. denied,* 143 S. Ct. 993 (2023) (quoting *Bradshaw*, 546 U.S. at 76); *see also Small v. Brigano,* 134 F. App'x 931, 936 (6th Cir. 2005) (indicating that habeas courts presume that the Ohio state courts correctly interpret Ohio evidence law in their evidentiary rulings).  Thus, "[i]n general, alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review."  *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012).

It is only "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, [that] it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  "[C]ourts 'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'" *Bugh*, 329 F.3d at 512 (citing *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)); *see also Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) ("Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (bracket in original)).

## 2. State Court Adjudication of Admission of Video Evidence

The court of appeals considered Mr. Cole's assignment of error alleging that the trial court erred in admitting the Sunoco gas station and Aleksin surveillance videos and found no error, explaining:

> {¶ 69} In the fifth assigned error, Cole claims that the trial court erred in allowing the admission of the surveillance videos taken from the Sunoco gas station and the Aleksin house (Fassett's neighbor). We disagree.

> {¶ 70} The admission of videotape evidence is a matter of discretion for the trial court. *Reinoehl v. Trinity Universal Ins. Co.,* 130 Ohio App.3d 186, 195, 719 N.E.2d 1000 (10th Dist.1998). Pursuant to Evid.R. 901(A), authentication is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." Any person with knowledge may authenticate a photograph or videotape by testifying that it fairly and accurately depicts the subject at the time the photographs or videotape were taken. *State v. Wynn,* 5th Dist. Stark No.2011CA00244, 2012–Ohio–3430, ¶ 39, citing *State v. Hannah,* 54 Ohio St.2d 84, 88, 374 N.E.2d 1359 (1978).

> {¶ 71} In this case, Mr. Viets and his son testified that they went to the Sunoco gas station and viewed the surveillance camera footage on the same day their home was burglarized. The son testified that he downloaded segments of the footage to a flash drive and handed the flash drive over to police. On a later date, the son reviewed the footage with the police and confirmed that it was what he originally downloaded. In court, the son testified that the video shown during his testimony was a copy of what he had personally downloaded and identified various images that depicted his mother's vehicle, their home, and events like his mother leaving the house on the day of the burglary. Mr. Viets authenticated still photographs made from the video.

> {¶ 72} Officer Donald Franks of the Fairview Police Department testified that he went to the Aleksin's house a couple of days after the burglary, viewed footage on Aleksin's computer, and asked Aleksin to make him a copy of the video. Officer Franks testified that Aleksin dropped the video off "the next day. He actually came in while I was at the station, and I took it from him. [I viewed it] to make sure that it was what he had shown me the night before and had everything that we requested."

> {¶ 73} In light of the above, we find that both videos were properly authenticated under Evid.R. 901. Mr. Viets and his son viewed the original footage at the Sunoco gas station the same day their home was burglarized and the son testified that the images on his edited version matched the original on the store's hard drive. Officer Franks viewed the original footage related to the burglary at the Fassett house,

compared it to the edited footage, and determined it to be a fair and accurate representation of the original footage and scene itself. *See Wynn* at ¶ 41. Therefore, the trial court did not abuse its discretion in admitting the videotapes into evidence. The fifth assignment of error is overruled.

*Cole*, 2016 WL 2756631, at * 12-13; (*see also* ECF Doc. 7-1, pp. 190-92).

**3.      Ground Three is Non-Cognizable and/or Without Merit**

As noted above, federal courts are limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle*, 502 U.S. at 67-68; s*ee also Lewis*, 497 U.S. at 780; *Engle*, 456 U.S. at 121 n.21. Accordingly, to the extent that Mr. Cole seeks federal habeas relief on the basis that the trial court erred in admitting the surveillance videos under state evidentiary rules, the undersigned recommends that the Court **DISMISS** Ground Three as non-cognizable on federal habeas review.

As it relates to Mr. Cole's assertion that his due process rights were violated as a result of the admission of the surveillance video (ECF Doc. 1, p. 4; ECF Doc. 11, pp. 10-15), Mr. Cole did not present that federal constitutional claim in state court. (ECF Doc. 7-1, pp. 118-19 (appellate brief, arguing trial court erred in admitting videos because videos were not properly authenticated under Ohio Rule of Evidence 901(A).) Thus, the federal constitutional claim that Mr. Cole presents in his federal habeas petition was not "fairly presented" and is not properly before this Court. *See McMeans*, 228 F.3d at 681 (explaining that a habeas petitioner must present both the facts and legal theories underpinning his claims to the state courts to satisfy the fair presentation requirement).

Even if the federal constitutional claim were properly before this Court, Mr. Cole has not shown that admission of the video surveillance evidence was "so egregious that it result[ed] in a denial of fundamental fairness." *Bugh*, 329 F.3d at 512. Further, Mr. Cole has not offered argument or evidence to establish that the state court decision "was contrary to, or involved an

41

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181.  The state court of appeals determined that the original video evidence admitted at trial was properly authenticated under State evidentiary rules. (ECF Doc. 7-1, p. 192, ¶ 73.) Given the record and the high deference afforded a state court's adjudication of a claim on the merits, the undersigned cannot find that the determination was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Bobby*, 565 U.S. at 24 (quoting *Harrington*, 562 U.S. at 103).

For the reasons set forth above, to the extent Mr. Cole's federal constitutional claim regarding the admission of the video footage is properly before this Court, the undersigned recommends that the Court **DENY** Ground Three on the merits.

## F.      Ground Four

In Ground Four, Petitioner argues the trial court abused its discretion and subjected him to cruel and unusual punishment by imposing consecutive sentences and by imposing an excessive sentence that is greatly disproportionate to the sentences of other defendants convicted of similar crimes.  (ECF Doc. 1, pp. 5-6; ECF Doc. 11, pp. 15-28.)  Respondent argues that Ground Four is not cognizable to the extent it raises a violation of state sentencing laws.  (ECF Doc. 7, pp. 39-40.)  Respondent also argues that Petitioner's claim that his sentence is unconstitutionally excessive and/or amounts to cruel and unusual punishment is without merit. (*Id*. at pp. 40-46.)

### 1.      Federal Habeas Relief Based on State Law Sentencing Claims

A challenge to a "state court's interpretation and application of its sentencing laws and guidelines" is not cognizable on federal habeas review.  *See Howard v. White*, 76 F. App'x. 52, 53 (6th Cir. 2003); *see also Thorne v. Lester*, 641 F. App'x. 541, 544 (6th Cir. 2016) (finding federal habeas relief was unavailable for errors of state law, which included the petitioner's claim that the state court misapplied the state merger rule).  This is because "[f]ederal habeas corpus relief does not lie for errors of state law."  *Howard*, 76 F. App'x. at 53 (quoting *Estelle*, 502 U.S. at 67); *see also Lewis*, 497 U.S. at 780 ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle*, 456 U.S. at 121 n.21 ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).  Accordingly, the undersigned recommends that the Court **DISMISS** Ground Four as not cognizable to the extent that the claim is based on asserted errors in applying state sentencing law.

### 2.      State Court Adjudication of Sentencing Claim

In connection with Mr. Cole's direct appeal, the state court of appeals considered Mr. Cole's assignments of error challenging his sentences on May 12, 2016, and found them to be without merit, explaining:[13]

> {¶ 74} In the sixth and seventh assignments of error, Cole challenges his sentence. In the sixth assignment of error, Cole claims that his total sentence of 48 years was "greatly disproportionate and amounts to the imposition of cruel and unusual punishment for his crimes." In the seventh assignment of error, Cole argues that the trial court failed to make the requisite statutory findings to impose consecutive sentences and his sentence of 48 years in prison was inconsistent with felony guidelines and an abuse of the trial court's discretion. Because we modified his conviction as to two counts of burglary and remanded those counts for resentencing, the following analysis does not pertain to those counts.

---

[13] On July 11, 2019, the court of appeals again found no merit to Mr. Cole's challenge to the imposition of consecutive sentences after he was resentenced on the two third-degree burglary convictions.  (ECF Doc. 7-1, pp. 433-42.)  In that later decision, the Court found his arguments barred by res judicata because they were previously raised and rejected by the court.  (*Id.*)

{¶ 75} Contrary to Cole's claim, in reviewing felony sentences, we no longer use an abuse of discretion standard of review, but apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Tate,* 8th Dist. Cuyahoga No. 97804, 2014–Ohio–5269, ¶ 55.

{¶ 76} R.C. 2953.08(G)(2) provides:

> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

> (b) That the sentence is otherwise contrary to law.

{¶ 77} Thus, R.C. 2953.08(G)(2) requires an appellate court to review the entire record to determine if it clearly and convincingly finds that the record does not support the sentencing court's statutory findings or if the sentence is otherwise contrary to law. *State v. Weaver,* 8th Dist. Cuyahoga No. 102902, 2016–Ohio–811, ¶ 12.

{¶ 78} Cole concedes that his sentences are not contrary to law, but argues that they were excessive. The decision, however, "'as [to] how long a sentence should be—assuming it falls within a defined statutory range—is a pure exercise of discretion.'" *State v. Gonzalez,* 8th Dist. Cuyahoga No. 102579, 2015–Ohio–4765, ¶ 7, quoting *State v. Akins,* 8th Dist. Cuyahoga No. 99478, 2013–Ohio–5023, ¶ 16. The Ohio Supreme Court has made it clear that trial courts have full discretion to impose a prison sentence within the statutory range. *State v. Foster,* 109 Ohio St.3d 1, 2006–Ohio–856, 845 N.E.2d 470, paragraph seven of the syllabus. Thus, apart from any claim that the sentencing judge failed to fulfill a statutorily mandated obligation before imposing sentence, a sentence falling within the statutory range is unreviewable. *Akins* at *id.*

### 1. Purposes and Principles of Sentencing

{¶ 79} A sentencing court is required to consider the purposes and principles of sentencing pursuant to R.C. 2929.11 and 2929.12. Under R.C. 2929.11(A), a felony sentence shall be reasonably calculated to achieve two "overriding purposes": (1) to protect the public from future crimes by the offender, and (2) to punish the offender using the minimum sanctions the court determines will achieve those purposes. Further, under R.C. 2929.11(B), the sentence imposed for a felony must

be commensurate with the seriousness of the offender's conduct and consistent with sentences imposed for similar crimes committed by similar offenders.

{¶ 80} Under R.C. 2929.12(A), a court sentencing a felony offender has discretion to determine the most effective way to comply with the purposes and principles of sentencing outlined in the statute. In exercising its discretion, however, the sentencing court must consider the seriousness, recidivism, and other mitigating factors set forth in R.C. 2929.12. *Id.*

{¶ 81} Recently, the Ohio Supreme Court reaffirmed that we review felony sentences pursuant to R.C. 2953.08(G). *State v. Marcum,* Slip Opinion No. 2016–Ohio–1002, ¶ 23, ⸻ Ohio ⸻, 2016 WL 1061782. As to the consideration of the factors in R.C. 2929.11 and 2929.12, the court noted a reviewing court's duty to defer to the sentencing court and reiterated that "an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." *Id.*

{¶ 82} Thus, although the trial court must consider the principles and purposes of sentencing as well as the mitigating factors, the court is not required to use particular language or make specific findings on the record regarding its consideration of those factors. *State v. Wilson,* 129 Ohio St.3d 214, 2011–Ohio–2669, 951 N.E.2d 381, ¶ 31; *State v. Jones,* 8th Dist. Cuyahoga No. 99759, 2014–Ohio–29, ¶ 13. In fact, consideration of the appropriate factors can be presumed unless the defendant affirmatively shows otherwise, *State v. Weaver,* 8th Dist. Cuyahoga No. 102909, 2016–Ohio–811, ¶ 17, citing *Jones,* and a trial court's statement in its sentencing entry that it considered the required statutory factors is sufficient to fulfill this obligation. *State v. Sutton,* 8th Dist. Cuyahoga Nos. 102300 and 102302, 2015–Ohio–4074, ¶ 72, citing *State v. Clayton,* 8th Dist. Cuyahoga No. 99700, 2014–Ohio–112, ¶ 9. Here, the trial court stated in its sentencing journal entries that it had considered "all required factors of law [and] finds that prison is consistent with the purpose of R.C. 2929.11."

{¶ 83} Cole claims that the court failed to sentence him consistent with other offenders, specifically his brother, John Cole, and claims that his sentence was harsher because he chose to go to trial rather than taking a plea. While we are aware that a sentence may not be influenced by a defendant's exercise of his or her constitutional right to a jury trial or the entering of a plea, the burden of proving that a sentence was vindictive falls on the defendant. *United States v. Goodwin,* 457 U.S. 368, 372, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982); *State v. O'Dell,* 45 Ohio St.3d 140, 543 N.E.2d 1220 (1989), paragraph two of the syllabus; *United States v. Poole,* 407 F.3d 767, 774 (6th Cir.2005), *certiorari denied,* 546 U.S. 913, 126 S.Ct. 279, 163 L.Ed.2d 248 (2005). There is no evidence in the record that the court acted vindictively, and Cole has failed to provide this court with any.

{¶ 84} Cole also claims that his sentence should have been in line with the 21 years in prison John received, because, as John was the one who actually committed the burglaries, John was more culpable. Accomplice liability aside, comparing the brothers' sentences is an apples-to-oranges comparison. First, Cole was convicted in four cases of a total of 16 counts of burglary, theft, forgery, criminal damaging, drug possession, misuse of a credit card, and child endangering.[] John, on the other hand, was indicted in three cases and pleaded guilty to five counts of burglary and one misdemeanor count of theft.

{¶ 85} We further note that when considering R.C. 2929.11(B) and the term of imprisonment for each conviction, John was sentenced to seven years on each burglary and Cole was sentenced to eight years on each burglary. The difference in the sentences for the individual burglaries was, therefore, only one year. We are cognizant that Cole's biggest complaint is the overall length of his sentence, but that goes to the consecutive nature of his convictions, not the term he was sentenced to on each conviction.

{¶ 86} During the sentencing hearing, the trial court considered Cole's extensive criminal history, his presentence investigation report, the arguments of counsel, Cole's statement, and what occurred during trial, including Cole's troubling behavior, which included making gestures and mouthing words to female jurors and the trial judge herself. The court also considered evidence seized from Danielle's car that showed other burglary targets. There is no doubt that by the time Cole was sentenced, the trial court had gained a greater appreciation of the details of the charged crimes and insight into Cole's character, having presided over a lengthy trial that included 24 witness and 91 exhibits. *See State v. Elkins,* 6th Dist. Sandusky No. S–08–014, 2009–Ohio–2602, ¶ 19 (nothing in the record to support a finding that the appellant's sentence was vindictive; the trial court had gained a greater appreciation of the details of the crimes and the appellant's character by the time of the sentencing hearing).

{¶ 87} In light of the foregoing, it is evident from the record that the trial court considered the purposes and principles of sentencing, the seriousness and recidivism factors, and relevant sentencing factors prior to the imposition of sentence.

## 2. Imposition of Consecutive Sentences

{¶ 88} Cole also challenges the consecutive nature of his sentences, arguing that the record does not support his sentence. But, again, R.C. 2953.08(G)(2) makes it clear that if the court has properly made the required findings in order to impose consecutive sentences, we must affirm those sentences unless we "clearly and convincingly" find "[t]hat the record does not support the court's findings[.]" In *State v. Venes,* 2013–Ohio–1891, 992 N.E.2d 453 (8th Dist.), this court noted:

It is also important to understand that the clear and convincing standard used by R.C. 2953.08(G)(2) is written in the negative. It does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings. In other words, the restriction is on the appellate court, not the trial judge. This is an extremely deferential standard of review.

*Id.* at ¶ 20.

{¶ 89} Cole challenges a single R.C. 2929.14(C)(4) finding that the court made before ordering consecutive service: that consecutive sentences were not disproportionate to the seriousness of his conduct. In considering whether his consecutive sentences were disproportionate we consider whether they were disproportionate to *Cole's own* conduct, not whether running the sentences consecutive was disproportionate to John Cole's sentence.

{¶ 90} After considering the presentence investigation report, listening "carefully to the trial of this case," the arguments of counsel, and Cole's statement, the trial court made the following findings in ordering the felony counts to be served consecutively:

The Court does find that consecutive sentences are necessary to protect the public from future crime. The court finds that consecutive sentences are necessary to punish the offender. The court further finds that consecutive sentences are not disproportionate to the seriousness of the offender's conduct. The court further finds that consecutive sentences are not disproportionate to the danger this defendant poses to the public.

And the Court finds that offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

And that when the court makes this finding, the court does consider that he has eight convictions for either assault or felonious assault.

* * * And he has numerous other convictions for drugs and various offenses.

But certainly his conduct in this case, where he actually rode around with his brother, and they actually pilfered communities and streets, and many of the individuals were elderly and apparently—if you go by the chart that they made, of the various places that they struck—and I admit * * * there were no convictions for any of those indicated burglaries. Their records indicate that they nonetheless had frequented or visited those homes, and had information with reference to what could constitute burglary offenses.

47

Now, I give to you that those cases were not presented, nor were they relevant during the process of this trial. But it is an indication of a danger an individual may pose to the community. And that was based upon the records that were apprehended from his own vehicle.

So therefore, the Court believes that consecutive sentences are necessary.

{¶ 91} The trial court also stated that it considered that John showed remorse while Cole showed none. When defense counsel insisted Cole could not show remorse because he maintained his innocence, the court indicated that Cole had not behaved in a respectful manner during trial, scaring female jurors by "winking, blinking, and mouthing things" to them and committing the same acts towards the court itself. The court stated that "[t]o conduct himself with respect throughout the course of the proceeding would have indicated he had some respect, some remorse." The court further stated that many of the burglary victims were elderly, were traumatized by the burglaries, and lost precious family heirlooms.

{¶ 92} In light of the above, the trial court made the requisite statutory findings in imposing consecutive sentences and did not err in finding that Cole's consecutive sentences were not disproportionate to his conduct. Under *State v. Bonnell,* 140 Ohio St.3d 209, 16 N.E.3d 659, 2014–Ohio–3177, 16 N.E.3d 659, ¶ 20–22, however, the trial court must also incorporate its consecutive sentence findings into its sentencing entry. *Id.* at syllabus. Our review of the record shows that the trial court's sentencing entries do not include the consecutive sentence findings. The trial court's omission is a clerical mistake and may be corrected through nunc pro tunc entries. *Id.* at ¶ 30, 16 N.E.3d 659.

{¶ 93} Therefore, the sixth and seventh assignments of error are overruled.

*Cole*, 2016 WL 2756631, at * 13-18 (footnote omitted); (*see also* ECF Doc. 7-1, pp. 192-201).

### 3.      Ground Four is Without Merit

Mr. Cole concedes that his sentence was within the statutory range and was not contrary to law (ECF Doc. 11, pp. 18, 28), but contends that he suffered cruel and unusual punishment in violation of the United States Constitution when the trial court imposed consecutive sentences which resulted in a sentence that was disproportionate to other defendants convicted of similar crimes, including his co-defendant (ECF Doc. 1, p. 5; ECF Doc. 11, pp. 15-28).

The Supreme Court has recognized that the 6th Amendment does not preclude states from establishing statutory requirements to govern the imposition of consecutive, rather than

48

concurrent, criminal sentences. *See Oregon v. Ice*, 555 U.S. 160, 171 (2009). Thus, the mere imposition of consecutive sentences does not establish a constitutional claim. *See, e.g., Ross v. Kelley*, 662 F. Supp. 2d 903, 937 (N.D. Ohio 2009) ("*Ice* makes it clear that Petitioner's Sixth Amendment rights were not violated when the trial judge imposed consecutive sentences.").

Mr. Cole nevertheless argues that the state trial court's imposition of consecutive sentences in his case amounts to cruel and unusual punishment in violation of the Constitution because his sentence was excessive and disproportionate to his brother and co-defendant's sentence of twenty-one years in prison.[14] (ECF Doc. 11, pp. 18-19.) He asserts that his sentence—which was more than twice as long his brother's—was clearly disproportionate given Mr. Cole was only the "look-out" or "get away driver," while his brother was the "main player" who went into the homes. (*Id*. at pp. 16-20, 22, 24, 25.) He also argues that the State's recommendation of five years in prison in connection with the plea deal offered to him before trial further indicates that the State considered his "conduct during [the] burglaries to be significantly less egregious or less dangerous compared [to] the co-defendants." (*Id*. at p. 22.) He also argues that the sentence disparity amounts to punishment because he, unlike his brother, took his case to trial. (*Id*. at pp. 19-20, 24, 25-26.)

The Supreme Court has recognized that "the Eighth Amendment's Cruel and Unusual Punishments Clause encompasses a narrow proportionality principle that applies to noncapital sentences." *Harmelin v. Michigan*, 501 U.S. 957, 959 (1991). But "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995); *see also White v. Keane*, 969 F.2d 1381, 1383 (2nd Cir. 1992) (rejecting petitioner's claim that the sentence imposed upon him

---

[14] He also argues that his sentence was disproportionate to that of Ms. Panagopoulos who sold all of the stolen items to pawn shops and received probation. (ECF Doc. 11, p. 20.)

resulted in cruel and unusual punishment). And "[t]he Supreme Court has determined that strict proportionality between a crime and its punishment is not required." *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000) (quoting *Harmelin*, 501 U.S. at 959-60). Rather, the Eighth Amendment "forbids only extreme sentences that are grossly disproportionate to the crime." *Graham v. Fla.*, 560 U.S. 48, 60 (2010), *as modified* (July 6, 2010) (quoting *Harmelin*, 501 U.S. at 1001) (internal quotations omitted). Indeed, courts have observed that "[o]utside the context of capital punishment, successful federal constitutional challenges to the length of a sentence alone are rare." *Duhamel v. Potter*, No. 1:16 CV 2758, 2018 WL 3105931, at *7 (N.D. Ohio Feb. 2, 2018) (citing *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)), *report and recommendation adopted,* No. 1:16 CV 2758, 2018 WL 1755275 (N.D. Ohio Apr. 12, 2018). In addressing the principles set forth in *Harmelin*, the Supreme Court explained:

> The controlling opinion in *Harmelin* explained its approach for determining whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime. A court must begin by comparing the gravity of the offense and the severity of the sentence. 501 U.S., at 1005, 111 S.Ct. 2680 (opinion of KENNEDY, J.). "[I]n the rare case in which [this] threshold comparison ... leads to an inference of gross disproportionality" the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. *Ibid.* If this comparative analysis "validate[s] an initial judgment that [the] sentence is grossly disproportionate," the sentence is cruel and unusual. *Ibid.*

*Graham*, 560 U.S. at 60.

When addressing Mr. Cole's claim that his sentence amounted to cruel and unusual punishment, the state court of appeals concluded that "the trial court . . . did not err in finding that Cole's consecutive sentences were not disproportionate to his conduct." (ECF Doc. 7-1, p. 201). In so holding, the court considered the nature and extent of the crimes and the record showing that the judge who presided over the lengthy trial also considered Mr. Cole's prior record and lack of remorse. (*Id*. at pp. 197-201.) Thus, the court compared the gravity of the

offense with the severity of the sentence and found it was not disproportionate.  The state court

of appeals also considered Mr. Cole's argument that his sentence was disproportionate in

comparison to his brother's, observing that it was an "apples-to-oranges" comparison because

Mr. Cole was convicted of sixteen counts of burglary, theft, forgery, criminal damaging, drug

possession, misuse of credit card, and child endangering, while his brother plead guilty to only

five counts of burglary and one misdemeanor count of theft.  (ECF Doc. 701, p. 197.)  The court

also observed that Mr. Cole was sentenced to eight years for each burglary count, while his

brother was sentenced to seven years per count, a difference of only one year.  (*Id*.)

 As to the first consideration under *Hamerlin*, whether the gravity of the offense and the

severity of the sentence were grossly disproportionate, there is no dispute that Mr. Cole's

sentence fell within the statutory range.  Further, Mr. Cole has failed to demonstrate that the state

court's finding that his sentences "were not disproportionate to his conduct" (ECF Doc. 7-1, p.

201) was either contrary to or involved an unreasonable application of clearly established federal

law or was based on an unreasonable determination of facts in light of the evidence.  Thus, it is

unnecessary to turn to the second consideration under *Hamerlin*, a comparison with other

sentences.  But even if such a comparison were warranted in this case, the state court of appeals

appropriately observed that the sentences applied to Mr. Cole and his co-defendant for specific,

individual burglary counts were similar, while Mr. Cole's longer sentence was largely the result

of his being convicted of numerous additional crimes.  Mr. Cole has also failed to show that this

finding was contrary to or involved an unreasonable application of clearly established federal

law or was based on an unreasonable determination of facts in light of the evidence.

To the extent that Mr. Cole contends that his lengthier sentence was a punishment for not

showing remorse, the Sixth Circuit has held that consideration of a defendant's lack of remorse

in determining his punishment does not implicate due process concerns.  *See United States v. Daneshvar*, 925 F.3d 766, 789 (6th Cir. 2019); *see also In re Cook*, 551 F.3d 542, 551 (6th Cir. 2009).  Thus, it cannot be said that Mr. Cole's federal constitutional rights were violated when Mr. Cole's lack of remorse was considered by the trial court when imposing his sentence.  To the extent that Mr. Cole contends that his lengthier sentence was a punishment for going to trial, the state court of appeals recognized that a sentence may not be influenced by a defendant's decision to exercise his right to a jury trial but found "no evidence in the record that the court acted vindictively."  (ECF Doc. 7-1, p. 196.)  Mr. Cole has failed to show that this finding was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of facts in light of the evidence.

The undersigned's independent review of the state court's adjudication of Mr. Cole's sentencing claim also does not reveal that it "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Bobby*, 565 U.S. at 24 (quoting *Harrington*, 562 U.S. at 103).  As the Supreme Court has explained, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare."  *Rummel*, 445 U.S. at 272.  And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington*, 562 U.S. at 102.

For the reasons set forth above, to the extent Mr. Cole argues that his consecutive sentences amount to cruel and unusual punishment in violation of the federal constitution, the undersigned recommends that the Court **DENY** Ground Four on the merits.

### G.      Ground Five

In Ground Five, Petitioner asserts he was denied the effective assistance of counsel. (ECF Doc. 1, p. 7; ECF Doc. 11, pp. 28-32.)  Specifically, he asserts trial counsel: (1) failed to investigate the case and ensure that the claims were meritorious; (2) failed to follow the explicit instructions the client gave him to communicate properly; (3) did not return over 50 calls from the client or the client's family; (4) failed to get a private investigator appointed as promised; (5) failed to depose co-defendants, who would have corroborated and confirmed his innocence; and (6) failed to raise the substantive issues that the client demanded.[15]  (ECF Doc. 1, p. 7.) Respondent contends that the only alleged ineffective assistance of trial counsel claim that was raised before the state courts is Mr. Cole's claim that trial counsel failed to call a material witness—his brother John Cole—with allegedly exculpatory testimony.  (ECF Doc. 7, pp. 19-20, 46.)  Respondent argues that claim is without merit and should be denied.  (*Id*. at pp. 46-49.)  As to the remaining alleged instances of ineffective assistance of trial counsel set forth in Ground Five, Respondent argues those claims were procedurally defaulted because they were not presented in state court, and because Mr. Cole cannot demonstrate cause and prejudice to excuse the procedural default. (*Id*. at pp. 20-24.)  The undersigned turns first to the question of procedural default.

#### 1.      Most Claims in Ground Five Were Procedurally Defaulted

Mr. Cole argues that his ineffective assistance of counsel claims in Ground Five were not procedurally defaulted because he presented an ineffective assistance of counsel claim to the

---

[15] Although the Petition mentions ineffective assistance of appellate counsel, Respondent notes that Mr. Cole's subclaims only identify alleged instances of ineffective assistance by trial counsel.  (ECF Doc. 7-1, p. 19.)  Because Petitioner has failed to adequately develop any claims of alleged ineffective assistance of appellate counsel, the undersigned concludes that any such claims were waived. *See McPherson*, 125 F.3d at 995.  The undersigned also notes that Mr. Cole did not file an App. R. 26(B) application to reopen his appeal to assert claims for alleged ineffective assistance of counsel.  Thus, even if Mr. Cole had developed an argument with respect to appellate counsel, he did not fairly present the claim to the state courts.

state courts in his petition for post-conviction relief.  (ECF Doc. 11, p. 28.)  But Respondent

does not argue that all of the claims in Ground Five were procedurally defaulted, only those

claims that were not included in the petition for post-conviction relief.  (ECF Doc. 7, p. 20.)

"[A] petitioner may procedurally default a claim by failing to raise a claim in state court,

and pursue that claim through the state's 'ordinary appellate review procedures.'"  *See Williams*,

460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston*, 282 F. Supp. 2d at 661

("Issues not presented at each and every level [of the state courts] cannot be considered in a

federal habeas corpus petition.").  To fairly present a claim to the state courts, the petitioner must

present both the facts and legal theories underpinning the claim to the state courts.  *See*

*McMeans*, 228 F.3d at 681.  "Because state courts, like federal courts, are required to enforce

federal law, including rights asserted under the Constitution," the Sixth Circuit observes that

"comity requires that the state courts should have the first opportunity to review the prisoner's

federal claim and provide any necessary relief."  *Nian v. Warden, N. Cent. Corr. Inst.*, 994 F.3d

746, 751 (6th Cir. 2021) (quoting *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005)).  State

courts are therefore "given the opportunity to see both the factual and legal basis for each claim,"

*id.* (quoting *Wagner v. Smith*, 581 F.3d 410, 414-15 (6th Cir. 2009)), before that claim may be

considered in a federal habeas petition.

Here, the only ineffective assistance of counsel claim Mr. Cole presented to the state

courts in his petition for post-conviction relief challenged his trial counsel's failure to call co-

defendant John Cole as a witness, testimony he asserted was clearly exculpatory in nature.[16]

(ECF Doc. 7-1, pp. 266-70.)  He did not present any other claims for ineffective assistance of

---

[16] Mr. Cole also argued that his due process rights were violated due to prosecutorial misconduct in coaching a
witness—Ms. Panagopoulos.  (ECF Doc. 7-1, pp. 266-68.)  However, that claim is distinct from his alleged
ineffective assistance of counsel claims and was not presented in Mr. Cole's Petition.

counsel to the state courts.  (ECF Doc. 11, pp. 30-31.)  The undersigned accordingly concludes
that the only ineffective assistance of counsel claim fairly presented to the state courts was his
claim that trial counsel was ineffective for failing to call John Cole as a witness.  All of the other
ineffective assistance claims now articulated in Ground Five were procedurally defaulted, and
are therefore subject to dismissal based on procedural default, unless Mr. Cole can establish (1)
cause and prejudice to excuse the procedural default or (2) that a fundamental miscarriage of
justice would occur if the claims are not considered.  *See Coleman*, 501 U.S. at 750.

To establish cause to excuse procedural default, a petitioner must point to "something
external . . . that cannot fairly be attributed to him" and "show that some objective factor external
to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Coleman*,
501 U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Mr. Cole does not offer
argument or evidence to support a finding of "cause" to excuse the procedural default of all but
the one of his ineffective assistance of counsel claims.  Thus, he has not met his burden to show
that cause and prejudice support excusing his procedural default of those claims.

Mr. Cole also does not specifically argue that his procedural defaults should be excused
based on "actual innocence."  Nevertheless, given his repeated references to the affidavits of Ms.
Panagopoulos and John Cole as potentially exculpatory evidence, the undersigned will consider
whether a fundamental miscarriage of justice based on a showing of "actual innocence" supports
excusing the procedural defaults.

 "A fundamental miscarriage of justice results from the conviction of one who is 'actually
innocent.'"  *Lundgren*, 440 F.3d at 764 (quoting Murray, 477 U.S. at 496).  For a claim of actual
innocence to be credible in this context, a petitioner must "support his allegations of
constitutional error with new reliable evidence—whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."

*Schlup v. Delo*, 513 U.S. 298, 324 (1995).  He must further "show that it is more likely than not

that no reasonable juror would have convicted him in the light of the new evidence."  *Id.* at 327.

This standard is intended to permit petitioners with "truly extraordinary" cases a "meaningful

avenue by which to avoid a manifest injustice."  *Id.* (internal quotations omitted).

Importantly, "'actual innocence' means factual innocence, not mere legal insufficiency."

*Bousley v. United States*, 523 U.S. 614, 623 (1998).  "To establish actual innocence," therefore, a

petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no

reasonable juror would have convicted him."  *Id.* at 623 (quoting *Schlup,* 513 U.S. at 327-28

(internal quotations omitted)).  When conducting an actual innocence analysis, courts must look

at all evidence, "'old and new' without regard to its admissibility" to determine whether "no

reasonable juror would find [the petitioner] guilty."  *Hubbard v. Rewerts*, 98 F.4th 736, 743 (6th

Cir. 2024), cert. denied sub nom. *Hubbard v. Tanner*, 145 S.Ct. 1201 (2025) (alteration in

original) (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)).

Here, Mr. Cole has highlighted two pieces of "new" evidence that he describes as

exculpatory, the August 28, 2015 affidavit of co-defendant Ms. Panagopoulos (ECF Doc. 7-1, p.

276) and the February 25, 2016 affidavit of co-defendant John Cole (*id.* at p. 275).  (*See* Doc 11,

pp. 8, 29-31.)  The undersigned will consider each affidavit in turn.

After offering incriminating testimony against Mr. Cole at his 2015 trial (*see* ECF Doc.

7-2, pp. 735-81), and responding to questions on cross-examination regarding her prior

inconsistent statements (*see id.* at pp. 767-73), Ms. Panagopoulos asserts broadly in her 2015

affidavit that her prior trial testimony was "untrue," explaining that she "was coached into saying

false statements by the prosecutors & detectives and was promised that if [she] said what they

coached [her] to say" they would give her "a deal for [her] part in the case." (ECF Doc. 7-1, p. 276.) She also asserts without specificity that "[w]hat I said in court . . . was all false statements against George Cole." (*Id.*) The state trial court considered this affidavit in connection with Mr. Cole's petition for post-conviction relief and found it neither credible nor persuasive. (*Id.* at p. 443.) Upon review, the court of appeals noted that Ms. Panagopoulos was a co-defendant and in a romantic relationship with Mr. Cole, and that her affidavit expressly contradicted her trial evidence despite extensive vetting of her credibility during cross-examination at trial. (*Id.* at pp. 491, 494-95, ¶¶ 3, 9.) The court concluded: "Nothing in [her] affidavit presents any compelling reason to overcome the inherent skepticism through which the recanted testimony is viewed." (*Id.* at pp. 494-95, ¶ 9.)

Consistent with those findings, the undersigned concludes that Ms. Panagopoulos's affidavit recanting her prior trial testimony is not "reliable" for purposes of showing a fundamental miscarriage of justice. The Sixth Circuit recently noted that "[a] vacillating witness who changes [her] story multiple times is often presumed to be unreliable." *Hubbard*, 98 F.4th at 749 (citing *Davis v. Bradshaw*, 900 F.3d 315, 330 (6th Cir. 2018)). Here, not only has Ms. Panagopoulos changed her story since the trial, but she was also cross-examined at trial regarding other inconsistent statements that preceded her trial testimony. Even if her affidavit were considered "reliable," it is insufficient to support a finding of actual innocence. At best, the affidavit creates a question as to the credibility of Ms. Panagopoulos's trial testimony, a question that was already vetted extensively through cross examination at trial. That is not adequate to support a finding of actual innocence, particularly since there was other evidence presented at trial—beyond Ms. Panagopoulos's testimony—that connected Mr. Cole to the burglaries, including video surveillance footage.

57

Turning to John Cole's affidavit, he averred that Ms. Panagopoulos was the driver for two of the burglaries, and that "George had no knowledge and wasn[']t present for these burglar[ie]s." (ECF Doc. 7-1, p. 275.)  He also reported that he could go into further detail if called to testify, and asserted that he told Mr. Cole's trial attorney multiple times that he was willing to testify at trial.  (*Id.*)  The state trial court considered this affidavit in connection with Mr. Cole's petition for post-conviction relief and found it neither credible nor persuasive.  (*Id.*, at p. 443.)  Upon review, the state court of appeals found the affidavit to be "questionable and inherently unreliable" because "he is not only a codefendant but also Cole's brother."  (*Id.* at pp. 491, 495, ¶¶ 3, 10.)  The court also noted that the affidavit only provided new information as to two of six burglaries, and that the new information "was expressly contradicted with independent witness or demonstrative evidence at trial."  (*Id.* at p. 495, ¶ 10.)  In particular, the court noted that the trial evidence included video of two men using a stolen credit card at a gas station, with testimony from a store clerk who was a family member of Mr. Cole identifying him as the person who used the credit card, thus "discrediting any claims by John that Cole knew nothing about the stolen credit card."  (*Id.* at p. 495, ¶ 11.)  Other evidence highlighted by the state court of appeals included a video of Mr. Cole parking a vehicle on a victim's street and text messages between Mr. Cole and John Cole describing the pawning of stolen items.  (*Id.* at pp. 495-96, ¶ 12.)

Consistent with the state court's findings, the undersigned concludes that John Cole's affidavit is not "reliable" for purposes of demonstrating a fundamental miscarriage of justice.  As courts have repeatedly held, "affidavits from family members do not provide the sort of extraordinary showing needed to establish a petitioner's actual innocence."  *Craig v. Coleman*, No. 1:16-CV-1003, 2017 WL 9485646, at *7 (N.D. Ohio June 21, 2017) (collecting cases), *report and recommendation adopted,* No. 1:16-CV-1003, 2017 WL 4111447 (N.D. Ohio Sept.

18, 2017).  Further, even if the affidavit were considered "reliable," it is insufficient to support a finding of actual innocence.  As the state court noted, the affidavit provides information regarding only two out of six burglaries, and even that information is contradicted by evidence presented at trial.  This is inadequate to support a finding of actual innocence.

Ultimately, even if Mr. Cole were able to establish that the ten year old affidavits of his codefendants, one his brother and the other his former romantic partner, could appropriately be characterized as both "new" and "reliable" evidence, they would nevertheless be insufficient to support a finding of actual innocence in this case because Mr. Cole has failed to "demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  *Bousley*, 523 U.S. at 623 (quoting *Schlup,* 513 U.S. at 327-28).

For the reasons set forth above, the undersigned concludes that Mr. Cole procedurally defaulted all ineffective assistance of trial counsel claims in Ground Five, except his claim that trial counsel was ineffective for not calling John Cole as a witness.  The undersigned further concludes that there has been no showing of cause or prejudice or fundamental miscarriage of justice to excuse the procedural defaults.  Accordingly, the undersigned recommends that the Court **DISMISS** those portions of Ground Five that have been procedurally defaulted, and turns to the merits of the one claim in Ground Five that was not procedurally defaulted.

### 2. The Sole Remaining Claim in Ground Five is Without Merit

In the sole remaining claim in Ground Five, Mr. Cole alleges that his trial attorney provided ineffective assistance of counsel when he "Failed to deposition Co-Defendants – Who would have corroborated story and confirmed innocence" (ECF Doc. 1, p. 7 (emphasis removed)), an argument he presented to the state courts when he argued in his petition for post-conviction relief that his right to effective assistance of counsel was violated when his attorney

failed to call a witness whose testimony was clearly exculpatory in nature (ECF Doc. 7-1, pp. 266-67), attaching the 2015 and 2016 affidavits of Ms. Panagopoulos and John Cole (*id.* at pp. 275-76) and his own affidavit averring that he told his trial attorney that he wanted his brother John to testify as a witness at his trial (*id.* at p. 274).

Respondent reasons that the claim in Ground Five is intended to challenge trial counsel's failure to call John Cole as a witness for the defense at trial, since the other codefendant did testify at trial.  (ECF Doc. 7, p. 46, n. 5.)  Mr. Cole does not challenge this interpretation of the claim in his Traverse, and his arguments are consistent with an assertion that his trial counsel erred by not calling John Cole to testify at trial.  (ECF Doc. 11, pp. 29-31.)  Respondent argues that this claim must fail on the merits because "[i]t is entirely plausible that Cole's trial counsel made the calculated decision based on the family relationship and John Cole's status as a co-defendant and convicted felon to not use him as a witness for the defense."  (ECF Doc. 7, p. 48.)  Mr. Cole responds that John Cole's affidavit is "clearly exculpatory in nature to the defense," and argues that "it is more than reasonable to infer that a jury might have been affected by the testimony."  (ECF Doc. 11, p. 31.)  He argues the affidavit is sufficient to demonstrate a "'reasonable probability' that the outcome of the trial would have been different but for counsel's deficient performance."  (*Id.* (citing *Strickland v. Washington,* 466 U.S. 668 (1984)).)

### i.    Legal Standard for Claims of Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court set forth two requirements to establish that an attorney was constitutionally ineffective.  *See* 466 U.S. at 687.  First, a petitioner must demonstrate "that counsel's performance was deficient," which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  In such cases, the petitioner must show that the

representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id*. at 688. "Judicial scrutiny of counsel's performance must be highly deferential [because] [i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* And "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal citation and quotation omitted).

Second, a petitioner must demonstrate "that the deficient performance prejudiced the defense." *Id.* at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* To meet this requirement, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

Further, where a state court of appeals has reached the merits of an ineffective assistance of counsel claim, federal habeas courts provide AEDPA deference to that adjudication under section 2254(d). *Perkins v. McKee*, 411 F. App'x 822, 828 (6th Cir. 2011). The U.S. Supreme

Court explained the double layer of deference federal courts must give to state courts in

reviewing *Strickland* claims under AEDPA as follows:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner
> must show that the state court's ruling on the claim being presented in federal court
> was so lacking in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for fairminded disagreement.
> . . . An ineffective-assistance claim can function as a way to escape rules of waiver
> and forfeiture and raise issues not presented at trial, and so the *Strickland* standard
> must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the
> integrity of the very adversary process the right to counsel is meant to serve. . . .
> Federal habeas courts must guard against the danger of equating unreasonableness
> under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies,
> the question is not whether counsel's actions were reasonable. The question is
> whether there is any reasonable argument that counsel satisfied *Strickland's*
> deferential standard.

*Perkins*, 411 F. App'x at 828 (quoting *Harrington*, 562 U.S. at 103, 105).

### ii.      Ground Five Fails Under AEDPA Double Deference

In determining whether a double layer of deference is applicable under AEDPA, this

Court must first consider whether a state court of appeals reached the merits of Mr. Cole's

ineffective assistance of counsel claim.  *See Perkins*, 411 F. App'x at 828.  "When a federal

claim has been presented to a state court and the state court has denied relief, it may be presumed

that the state court adjudicated the claim on the merits in the absence of any indication or state-

law procedural principles to the contrary."  *Harrington*, 562 U.S. at 99.  Thus, "unless there is

good reason for a federal court to think a state court's decision was *not* on the merits, the federal

court must assume it *was* on the merits and apply § 2254(d)."  *Stermer v. Warren*, 959 F.3d 704,

722 (6th Cir. 2020) (emphasis in original).  The presumption that the state court decision was

decided on the merits is only overcome "when there is reason to think some other explanation for

the state court's decision is more likely." *Id.* (citing *Harrington*, 562 U.S. at 99-100).

Here, the trial court clearly addressed the merits of the ineffective assistance of counsel

claim.  Initially, the trial court denied Mr. Cole's petition for post-conviction relief in part based

on his asserted failure to attach the relevant affidavits to his petition, finding he had failed to submit sufficient evidence to warrant a hearing or to show substantive grounds for relief.  (ECF Doc. 7-1, pp. 316-21.)  But after the matter was remanded with instructions to consider the supporting affidavits (*id.* at 384-93), the trial court found the affidavits were not "credible or persuasive," noting that the affidavits included Mr. Cole's "own self-serving affidavit and an affidavit provided by each of his co-defendants," and again found the evidence insufficient to warrant a hearing or show substantive grounds for relief (*id.* at p. 443).  On appeal, Mr. Cole argued that the trial court erred by dismissing his petition without an evidentiary hearing because the affidavits established a meritorious issue.  (*Id*. at p. 461.)  The court of appeals overruled the sole assignment of error, finding that the trial court did not err in finding the affiants to be incredible without holding a hearing.  (*Id*. at p. 496.)

Although the written decision of the state appeals court directed its discussion to the question raised in Mr. Cole's appeal, whether the trial court erred by denying him an evidentiary hearing on his petition for relief, this Court must assume that the state court adjudicated Mr. Cole's ineffective assistance of counsel claim on the merits "unless there is good reason for a federal court to think a state court's decision was *not* on the merits[.]"  *Stermer*, 959 F.3d at 722 (emphasis in original).  The undersigned is not aware of any good reason to believe that the decision of the state court of appeals was not "on the merits" of the ineffective assistance of counsel claim Mr. Cole presented to the state courts.  Accordingly, this Court must apply a double layer of deference under AEDPA to Mr. Cole's claim.  *See Perkins*, 411 F. App'x at 828.

Applying AEDPA deference to the claim asserted in Ground Five, this Court does not consider "whether counsel's actions were reasonable," but instead "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Perkins*, 411 F.

App'x at 828 (quoting *Harrington*, 562 U.S. at 103, 105).  In upholding the trial court's denial of the ineffective assistance of counsel claim, the state court of appeals found John Cole's affidavit to be "questionable and inherently unreliable" because of his family relationship with Mr. Cole and further noted that that affidavit only provided information relating to two of six robberies and was "expressly contradicted with independent witness or demonstrative evidence at trial." (ECF Doc. 7-1, p. 495.)  Specifically, the court explained:

> {¶ 9} In this case, the trial judge presided over Cole's trial and the affidavits were from a relative or one interested in the success of Cole's efforts. The affidavits from the codefendants uniformly sought to downplay Cole's role in the burglaries. Panagopoulos's affidavit expressly contradicted her trial evidence. Panagopoulos claimed that her trial testimony was coerced based on the state's plea offer, a credibility issue that was extensively vetted during cross-examination at Cole's trial.[1] Courts have "repeatedly acknowledged the unreliability· of recanting witnesses stating that 'newly discovered evidence which purportedly recants testimony given at trial is looked upon with the utmost suspicion.'" *State v. Corbin,* 8th Dist. Cuyahoga No. 73647, 1999 Ohio App. LEXIS 6386, 9 (Dec. 30, 1999); quoting *State v. Brooks,* 8th Dist. Cuyahoga No. 65088, 1994 Ohio App. LEXIS 910 (Mar. 10, 1994), and *State v. Germany,* 8th Dist. Cuyahoga No. 63568, 1993 Ohio App. LEXIS 4687 (Sept. 30, 1993). Nothing in Panagopoulos's affidavit presents any compelling reason to overcome the inherent skepticism through which: the recanted testimony is viewed.

> > [FN 1 - Cole filed a written motion for acquittal under Crim.R. 29 in which he thoroughly discussed Panagopoulos's credibility issues considering her plea agreement. At that time, Cole argued that Panagopoulos had no information tying Cole to the crimes and only provided the incriminating information to avoid her own legal troubles.]

> {¶ 10} John's affidavit, because he is not only a codefendant but also Cole's brother, is similarly questionable and inherently unreliable. Courts generally note "the highly questionable nature of affidavits from family members." *State v. Caldwell,* 8th Dist. Cuyahoga No. 73748, 1998 Ohio App.: LEXIS 4220 (Sept. 10, 1998). Further, Cole only set out information pertaining to two of the six burglaries, and that information was expressly contradicted with independent witness or demonstrative evidence at trial.

> {¶ 11} On that latter point, the trial evidence against Cole was extensive. As for the stolen credit card that John questions, police identified surveillance video of two men using the stolen credit card at a gas station. The store clerk testified at Cole's trial and identified "Cole, whom she happened to be related to, as the man who used

the stolen credit card." *Cole*, 8th Dist. Cuyahoga Nos. 103187, 103188, 103189, and 103190, 2016-Ohio-2936, at ¶ 8. Cole had used the stolen credit card to purchase items at the station, discrediting any claims by John that Cole knew nothing about the stolen credit card. *Id.*

{¶ 12} In another burglary, Cole was identified by the victim through surveillance video from another nearby gas station. *Id.* at ¶10. In that video, Cole can be seen as one of two men, one of whom walked up to the victim's driveway, and Cole can be seen parking the vehicle on the victim's street. *Id.* at ¶ 11. In a third burglary, the state presented text messages between John and Cole describing the pawning of the stolen item, and in yet another criminal episode, Cole drove Panagopoulos and John to the pawn shop to sell stolen items that were connected to an earlier burglary. *Id.* at ¶ 19, 21. Although the trial testimony was far more extensive, the above identifications directly implicating Cole are not addressed in Cole's petition for postconviction relief despite the fact that the victims and independent evidence identify Cole as a perpetrator of the crimes.

{¶ 13} Considering the totality of the evidence presented at trial, we cannot conclude that the trial court abused its discretion in finding the affiants to be incredible without a hearing. Cole has demonstrated no error. The sole assignment of error presented for our review is overruled.

{¶ 14} The decision of the trial court is affirmed.

(ECF Doc. 7-1, pp. 494-96.)

Given John Cole's personal relationship with Mr. Cole, his status as a co-defendant who pled guilty to the charged crimes, the fact that his affidavit only provided potentially exonerating testimony as to two of the six robberies, and the evidence presented at trial that expressly contradicted his proposed testimony, the undersigned concludes that there is at least a "reasonable argument" that trial counsel's decision not to call John Cole as a witness at trial fell within the wide range of reasonable professional assistance that is permissible under the *Strickland* standard. *See, e.g., Moody v. Parris*, No. 20-5299, 2022 WL 3788503, at *4-6 (6th Cir. Aug. 30, 2022) (finding decision not to call a codefendant to testify was reasonable under *Strickland*, since he could not be compelled to testify and could be easily impeached).

### iii.    Ground Five Also Fails Under the *Strickland* Standard

Even if the AEDPA double deferential standard were not applicable in this case, the undersigned further concludes that Mr. Cole has failed to show that the *Strickland* standard has been met for his ineffective assistance of counsel claim.

Under the first step of the *Strickland* analysis, Mr. Cole must show that his attorney's failure to call John Cole to testify was an error "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687.  And in considering this question, this Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal citation and quotation omitted).  Here, considering John Cole's status as a co-defendant who had pled guilty to the charged crimes, his familial relationship with Mr. Cole, and the evidence contradicting his proposed testimony all support a finding that trial counsel's failure to call John Cole to testify amounted to reasonable professional assistance. *See, e.g., Moody*, 2022 WL 3788503 at *4-6.  Mr. Cole certainly has not met his burden to overcome the presumption that his attorney's actions were reasonable.

Under the second step of the *Strickland* analysis, Mr. Cole must show that his attorney's failure to call John Cole to testify prejudiced the defense by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 687, 694.  Mr. Cole asserts that this standard has been met. (ECF Doc. 11, p. 31.)  The undersigned disagrees.  If called to testify at trial, John Cole would have been subject to impeachment based on both his familial relationship to Mr. Cole and his status as a codefendant who had pled guilty to related charges.  His affidavit suggests that his potential

testimony would also have been limited to two of the six charged burglaries.  And the jury would have been required to weigh his potentially exonerating testimony against contradictory evidence that included surveillance videos, text messages, and testimony from Ms. Panagopoulos connecting Mr. Cole to the burglaries.  In this context, the undersigned concludes that Mr. Cole has not met his burden to demonstrate a reasonable probability that the outcome of his trial would have been different if his attorney had called John Cole to testify.

Based on the foregoing, the undersigned concludes that Mr. Cole has not shown that his trial counsel's performance amounted to constitutionally ineffective assistance of counsel under *Strickland* and he has not shown that the decision of the state court of appeals was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Accordingly, the undersigned recommends that the Court **DENY** the sole remaining ineffective assistance of trial counsel claim in Ground Five.

### IV.     Recommendation

For the reasons stated herein, the undersigned recommends that the Court: (1) **DENY** Ground One with prejudice because it is without merit; (2) **DISMISS** and/or **DENY** Ground Two with prejudice because it is not cognizable and/or without merit; (3)  **DISMISS** and/or **DENY** Ground Three with prejudice because it is not cognizable and/or without merit; (4) **DISMISS** and/or **DENY** Ground Four with prejudice because it is not cognizable and/or without merit; and (5) **DISMISS** and/or **DENY** Ground Five with prejudice because it is procedurally defaulted and/or without merit.

July 10, 2025

*/s/ Amanda M. Knapp*
AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE

### <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).